668 A.2d 110

**CHESTER RESIDENTS CONCERNED FOR QUALITY LIVING, Appellees,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL RESOURCES, Appellant.**

**Appeal of THERMAL PURE SYSTEMS, INC.**

Supreme Court of Pennsylvania.

Argued Oct. 25, 1995.

Decided Nov. 22, 1995.

Reargument Denied Dec. 28, 1995.

Bruce W. Kauffman, Glen R. Stuart, J. Bradford McIlvain, Philadelphia, for Thermal Pure Systems, Inc.

Jerome Balter, Philadelphia, for Chester Residents Concerned for Quality Living.

Mark L. Freed, Conshohocken, for Comm., Dept. of Environ. Resources.

Before NIX, C.J., and FLAHERTY, CAPPY, CASTILLE and MONTEMURO, JJ.

## *OPINION*

MONTEMURO, Justice.

In June of 1990, the Department of Environmental Resources (DER) adopted an Infectious and Chemotherapeutic Waste Plan pursuant to the Infectious and Chemotherapeutic Waste Disposal Act, 35 P.S. §§ 6019.1–6019.6 (I/C Act). Approximately three years later, in July of 1993, DER issued a permit to Thermal Pure, Inc. for the construction and operation of a commercial waste treatment and transfer facility which utilized an autoclaving method [1] to process the material shipped to it. This material, having been sterilized by the autoclaving, was then fit either for incineration or use as landfill.

Chester County Residents Concerned for Quality Living challenged the validity of Thermal Pure's permit on the grounds that it violated the I/C Act. The Environmental Hearing Board (EHB) upheld the permit, and Chester Residents sought review in the Commonwealth Court, which reversed, and in so doing, concluded that the permit was invalid because the Plan was violative of the I/C Act's provisions.

---

1. Autoclaving involves the sterilization of contaminated material by superheated steam.

Thermal Pure filed both a Motion for Reconsideration and a Petition for Stay; only the latter was addressed by the Commonwealth Court. Pursuant to the court's denial of the stay, DER directed that Thermal Pure cease and desist from its operations within fourteen days. Thermal Pure then sought an emergency stay of the DER directive in this Court, which denied both the stay request and a motion for reconsideration of the denial. DER entered a cease and desist order, and Thermal Pure requested that this Court exercise plenary jurisdiction over the matter and hear argument on the stay. Argument was heard and resulted in a supersedeas of the DER cease and desist order pending this Court's review. Thermal Pure had, in the meantime, filed a Petition for Allowance of Appeal, which we granted, directing that four issues be briefed.

■ The first of these issues concerns Thermal Pure's contention that the Commonwealth Court lacked jurisdiction to invalidate the I/C Waste Plan. Thermal Pure has argued consistently that because Chester Residents failed to appeal the Plan within thirty days after notice of its adoption was given to the public as is required by 25 Pa.Code § 21.52(a), their challenge to the permit, which came some three years later, was untimely, depriving the Commonwealth Court of jurisdiction to adjudicate the Plan's validity. Moreover, Thermal Pure contends that the issue of the Plan's validity was not contained in the appeal to the Environmental Hearing Board from DER's issuance of the permit, since the appeal was based on the notion that the permit violated the Plan, not that the Plan violated the I/C Act. More pertinently, the validity contention does not appear in Chester Residents' Petition for Review to the Commonwealth Court.

The matter was, in fact, first raised in Chester Residents' cross motion for summary judgment before the Board, which did not address it. Rather the EHB concluded that autoclave and transfer facilities are not governed by the Plan, so that the permit application need not be reviewed in that context. Thus the decision was arrived at on grounds other than the legitimacy of the Plan, and was accordingly unaffected by the

Code section denying jurisdiction to the EHB where the appeal is untimely. Indeed, the EHB noted that "the sole issue [before it was] a legal one—the applicability of the Infectious Waste Act to issuance of Permit No. 101618 to Permittee (Thermal Pure)." The Commonwealth Court, by contrast, focusses almost exclusively on what it perceives as the deficiencies of the Plan, without mentioning the provenance of the issue.

Chester Residents' response is a concession that it was not the Plan per se which they appealed, but the permit issued to Thermal Pure. They argue, however, that their timely filed Petition for Review in Commonwealth Court confers the jurisdiction necessary to assess the EHB decision concerning the permit. To make such a determination, they contend, requires first, the compliance of the permit with the statute, and then the validity of the Plan qua the statute must be investigated and appraised. Examination of the Plan is thus a natural extension of the issue actually raised.

When addressing a claim of jurisdictional legitimacy such as that advanced by Chester Residents, we must necessarily examine the subtext of their argument and its necessary implications. Here what is being urged would require this Court to ignore principles of jurisdiction and waiver in allowing a claim which Chester Residents themselves neglected to present properly and/or timely. Appeals may not be taken by indirection, either verbal or temporal; the rules governing the appeal process specifically require timeliness and clarity. Without the former we are not permitted to entertain an appeal, without the latter we may dismiss it.

Here, Chester Residents concede that the pivot on which they would have these proceedings turn, the validity of the Infectious and Chemotherapeutic Waste Plan, was not the focus of their appeal, a fact which becomes obvious when the sequence of events in the lower courts is examined. If indeed the Plan was fatally flawed, it is this which should have been asserted from the outset. Instead, Chester Residents would have us afford them the benefit of hindsight when the thirty

day appeal period has already precluded them from doing so.[2] Moreover, even assuming we would permit a challenge to a plan lodged three years after its adoption, we cannot allow such a challenge when it has never been articulated. As the Petition for Review makes clear, if indeed Chester Residents wished the Commonwealth Court to assess the Plan for conformity to constitutional principles or statutory correctness, they failed to make such a request to the court. Thus the Commonwealth Court's action in declaring the Plan invalid has no foundation in the matrix of the appeal. Even were the court's pronouncements theoretically valid, they are at best dicta since the appeal does not contain the claim to which the court directed its attention. Thermal Pure is therefore correct in stating that the Commonwealth Court was without jurisdiction to rule in this matter.

However, even assuming that the Commonwealth Court was within its authority on addressing Chester Residents' claims, the question arises as to whether it properly applied the rules of appellate review, and in so doing afforded appropriate deference to the DER and EHB decisions construing the statute.

The Commonwealth Court's scope of review in examining an agency decision is limited to a determination of whether an error of law has been committed, whether constitutional rights have been violated, or whether findings of fact are supported by substantial evidence. *Mathies Coal Co. v. Commonwealth, Department of Environmental Resources,* 522 Pa. 7, 13, 559 A.2d 506, 509 (1989). Moreover,

---

**2.** Chester Residents further argue that they could not have anticipated at the time of the Plan's adoption that an appeal would ever be necessary since neither they as an organization nor the Thermal Pure facility were then in existence. They suggest that they should be given a special dispensation to appeal because they were, corporately, born too late to challenge the Plan in a timely fashion, and warn that denying them access to the appellate process would require every community in Pennsylvania to challenge every DER action based on its prospective adverse effect. We would remind Chester Residents that this is precisely why public notice is required to be given concerning impending DER actions such as the Plan, i.e., in order to solicit public response before the implementation of such actions and any possible negative repercussions.

courts will not review actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power ... possession of discretionary power by an administrative agency does not make it wholly immune from judicial review, but the scope of that review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or purely arbitrary execution of the agency's duties or functions.

*Blumenschein v. Pittsburgh Housing Authority*, 379 Pa. 566, 572–73, 109 A.2d 331, 334–35 (1954).

■ The Commonwealth Court justified its decision to invalidate the Plan using the same oblique approach espoused by Chester Residents: the court declared Thermal Pure's permit to be invalid by association. The Plan violated the Act by failing to mention sterilization facilities; it was, therefore, not a proper plan, and, by necessary implication, the permit issued pursuant to it violated the Act. The court found that despite the mention only of "incineration or other disposal" in the Act, the scope of the statute was not restricted to incineration. In essence, the court, failing to find the Plan comprehensive enough to satisfy its interpretation of the statute's intent, invalidated the Plan which conformed to the language of the Act.

Thermal Pure argues that the Commonwealth Court improperly ignored the decision of the EHB that DER was not required to review the permit within the context of the Plan because the activities licensed by the permit were all predisposal processes, and the Plan pertained only to commercial incinerators. It is contended that the Act distinguishes between disposal and pre-disposal activities, and intentionally excluded pre-disposal functions from those matters which must be addressed by the Plan. In deciding that all aspects of waste handling must be covered under the regulations, Thermal Pure argues, the Commonwealth Court substituted its judgment for that of the administrative agencies whose plan and decision respectively, it overrode.

Moreover, Thermal Pure contends that its permit was not issued pursuant to the I/C Plan, but under the Solid Waste Management Act, 35 P.S. §§ 6018.101–6018.1003, and the regulations promulgated thereunder. The fortunes of the permit are therefore independent of the Plan even were the Plan ultimately determined to be violative of the I/C Act.

Chester Residents defend the Commonwealth Court's action by asserting that the Plan was intended by the framers of the Act to encompass, on a integral basis, "incineration or other disposal" of infectious waste, but fails to do so as it covers only incinerators. Chester Residents further insist the phrase "incineration or other disposal" must be read to include sterilization, and that in fact incineration and sterilization are interchangeable terms which both refer to disposal methods. Therefore, references in the Act and the Plan to "incineration or other disposal" are applicable to autoclaving facilities.

Both empirical and theoretical problems arise from the notion that no distinction exists between ultimate destruction (incineration) and interim process (sterilization). Although both share an effect, that is, neutralization of the pathogens lurking in unprocessed infectious waste, only incineration reduces mass—literally disposes of a large percentage of the material so treated. Sterilization has no equivalent effect, and requires yet another step for *any* disposal to occur. The two cannot, therefore, be easily or reasonably equated. Chester Residents' insistence that they are the same is therefore ludicrous, since rendering tons of waste material bacteriologically innocuous fails in any way to obviate the necessity for providing some place to put it.

Thus, we conclude that had the legislature intended the Act to cover sterilization as well as disposal methodology, it would have said so. The judiciary is not empowered to interpolate an idea which is not only inconsistent with the plain meaning of a statute, but may well be in outright conflict with the intent of the legislature. In having imposed its construction of the statute here, the Commonwealth Court committed a clear error of law.

The remaining two issues [3] are constitutional ones concerning whether the Commonwealth Court's stance herein subjects Thermal Pure to violation of its equal protection rights, and in addition, violates the commerce clause. As we have already provided grounds on which to reverse the Commonwealth Court's decision, we need not address these questions. *See Krenzelak v. Krenzelak*, 503 Pa. 373, 469 A.2d 987 (1983).

The order of the Commonwealth Court is reversed.

ZAPPALA, J., did not participate in the consideration or decision of this matter.

MONTEMURO, J., participates by designation as a senior judge as provided by Rule of Judicial Administration 701(f).

3. We note DER's claims that no action has yet been taken on Thermal Pure's request that this Court exercise its plenary jurisdiction over DER's cease and desist order, although that order and the Commonwealth Court proceedings thereon remain stayed, along with a motion filed by Chester Residents to dismiss Thermal Pure's Petition for Review in the Commonwealth Court. Our decision in this matter today resolves DER's claims, rendering moot any proceedings still in abeyance.