**S & H TRANSPORT, INC.**

**v.**

**CITY OF YORK, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Sept. 8, 2014.
Decided Oct. 15, 2014.

Jason R. Sabol, Assistant Solicitor, York, for appellant.

Rees Griffiths, York, for appellee.

BEFORE: DAN PELLEGRINI, President Judge, and BONNIE BRIGANCE LEADBETTER, Judge, and ROBERT SIMPSON, Judge.

OPINION BY President Judge PELLEGRINI.

The City of York (City) appeals from an order of the Court of Common Pleas of York County (trial court) finding that S & H Transport, Inc. (S & H) was exempt from the City's business-privilege and mercantile tax (BPT) under Section 301.1 of the Local Tax Enabling Act (Act), Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. § 6924.301.1.[1] For the following reasons, we reverse the trial court's order and remand the case for further proceedings.

S & H is a Pennsylvania corporation headquartered in the City which renders freight-brokerage services by receiving freight-shipment orders from customers— generally manufacturers—and negotiating contracts for delivery with carriers. S & H invoices each customer for the full balance owed, including both the cost of shipment and S & H's brokerage commission, and then remits payment to the carrier. Because S & H collects the entire balance, its records include the gross receipts from freight-shipment transactions before payment is made to the carriers, meaning that the gross receipts do not include deductions for the shipment costs.

After auditing S & H's BPT returns, the City found that S & H claimed an exemption from the tax for tax years 2007–2011, and the City issued a notice of assessment imposing the BPT on those transactions. S & H appealed that notice, and following an administrative hearing, the tax-assessment appeal hearing officer upheld the City's assessment. S & H appealed to the trial court, contending that it was exempt from the City's BPT because its gross receipts were derived from transactions involving the rendering of "public utility services."[2]

Before the trial court, S & H presented the testimony of its controller, David Ruiz (Controller Ruiz), who stated that S & H "is a transportation brokerage company," meaning that it is "the middleman between the customer and the carriers." (Reproduced Record [R.R.] at 40a.) He further explained S & H's business procedure as follows: S & H receives calls from customers that place orders to transport goods and S & H provides a quote. S & H then selects a carrier and negotiates shipment costs based on "whatever the market will bear" seeking to earn a profit. (*Id.* at 65a.) The customer pays S & H for the entire service, including the cost of delivery, and S & H remits payment to the

---

1. Section 301.1 of the Act enables a local municipality, including third-class cities such as York, to impose a business-privilege tax. However, the Act explains that local municipalities are without authority:

   (2) To levy, assess or collect a tax on the gross receipts from utility service of any person or company whose rates and services are fixed and regulated by the Pennsylvania Public Utility Commission or on any public utility services rendered by any such person or company or on any privilege or transaction involving the rendering of any such public utility service. . . .

   53 P.S. § 6924.301.1(f)(2); *see also* Article 343, Section 343.02(c)(3) of the York City Ordinance, Bus. Reg. & Tax § 343.02(c)(3) (incorporating Section 301.1(f)(2) of the Act);

   Section 204(D)(3) of the City's Business Privilege and Mercantile Tax Regulations, York Business Privilege and Mercantile Tax Rules & Regulations § 204(D)(3). Because these provisions are identical, we will reference them collectively as Section 301.1.

2. S & H also raised two other arguments which the trial court did not reach and which are not the subject of the instant appeal: (1) that the receipts used by the City to calculate tax liability improperly included total charges imposed on customers, including not only S & H's commissions but also the freight-brokerage costs; and (2) that the City erroneously taxed S & H for transactions originating and completed outside of the City's taxing jurisdiction.

carrier. The difference between S & H's quote and the cost of delivery represents S & H's brokerage commission.

Controller Ruiz asserted that to be registered in the transportation industry as a broker, a company must be registered with the Unified Carrier Registration (UCR) and that S & H was registered with both the UCR and the Federal Motor Carrier Safety Administration. He stated that all notifications regarding annual registration and fees for the UCR are communicated to S & H by the Pennsylvania Public Utility Commission (PUC). Controller Ruiz further testified that all freight carriers engaged by S & H are licensed and subject to regulation as public utilities and are regulated by the PUC. He explained that on its 2007–2011 tax returns, S & H claimed an exemption based upon the fact that it is regulated by the PUC. On cross-examination, he conceded that S & H's rates are not fixed by the PUC, but reaffirmed that the PUC does regulate S & H's business.

S & H also presented the testimony of its expert, Joseph T. Kolarik, a certified public accountant, who testified that in his opinion, S & H properly excluded its gross receipts from the BPT return because S & H is exempt under the third clause of Section 301.1(f)(2) pertaining to "any privilege or transaction involving the rendering of any such public utility service." He explained that even though S & H "does not provide transportation services and its rates are not regulated by Public Utility Commission," it still qualifies under this exemption because "it may be involved in a

rendering of services to such companies." (R.R. at 105a.) On cross-examination, Mr. Kolarik agreed that S & H's rates and services are not fixed or regulated. Nonetheless, he explained that because S & H sells a "complete service that involves brokerage plus transportation," the service involves the rendering of common carrier services and, therefore, the third clause applies. (*Id.* at 132a.) [3]

▪ The trial court found that S & H was exempt under Section 301.1(f)(2) of the Act because S & H was involved in the rendering of a public utility service by brokering freight-transportation services between its customers and common carriers and excluded all of S & H's transactions from the BPT. This appeal followed.[4]

▪ Section 301.1(f)(2) of the Act generally prevents local governments from taxing subjects involved in the rendering of public utility services. The first clause—"[t]o levy, assess or collect a tax on the gross receipts from utility service of any person or company whose rates and services are fixed and regulated by the Pennsylvania Public Utility Commission"—prohibits a tax on the utility as measured by gross receipts. The second clause—"on any public utility services rendered by any such person or company"—prohibits the local government from imposing a tax on the customer, as measured by the amount billed to the customer. The third clause, the one at issue here, prohibits the local government from enacting a tax on "any privilege or transaction **involving the rendering** of any such public utili-

---

3. Additional testimony was elicited from Richard D. Antrim, the President and Chief Executive Officer of S & H, Albert R. Timko, Jr., the Executive Director of the York Area Tax Bureau, and Controller Ruiz, but that testimony pertained to other issues not currently before this Court.

4. Issues of statutory interpretation present questions of law to which a plenary scope of review and *de novo* standard of review apply. *Medical Shoppe, Ltd. v. Wayne Memorial Hospital*, 866 A.2d 455, 459 n. 10 (Pa.Cmwlth. 2005).

ty service...."[5] The issue is whether this clause applies only to prohibit levying a business tax on the public utility for the privilege of engaging in public utility services, or whether it extends to all parties that engage in the business of buying public utility services.[6]

█ In this case, S & H was not "involved"[7] in the "rendering"[8] of any "public utility"[9] service. As the undisputed

---

5. Section 301.1(f)(2) of the Act, 53 P.S. § 6924.301(f)(2) (emphasis added.) The purpose of a BPT is to tax an entity for the privilege of doing business in the district; this tax is measured by the gross receipts from all of a business's activities. The BPT differs from a transaction tax, which is imposed on the receipts from the designated transactions, the measure of which is the value of the transaction. *See Susquehanna Area Regional Airport Authority v. Middletown Area School District*, 918 A.2d 813, 818 (Pa.Cmwlth.2007).

6. It is axiomatic that a statute's words and phrases must be construed according to their common and approved meanings. 1 Pa.C.S. § 1903(a) ("Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition."). Moreover, "[g]eneral words shall be construed to take their meanings and be restricted by preceding particular words." 1 Pa.C.S. § 1903(b).

7. Affording the word its ordinary meaning, "involve" is defined, in pertinent part, as: **2a:** to engage as a participant <workers *involved* in building a house> **b:** to oblige to take part <right of Congress to—the nation in war> **c:** to occupy (as oneself) absorbingly; *esp:* to commit (as oneself) emotionally <was *involved* with a married man> **4** ... **b:** to relate closely: connect **5a:** to have within or as part of itself: include **b:** to require as a necessary accompaniment: entail **c:** affect.
Merriam–Webster's Collegiate Dictionary 660 (11th ed. 2003).

8. Merriam–Webster's Collegiate Dictionary defines "render" as: "to transmit to another: deliver"; "give up, yield"; "to furnish for consideration, approval, or information"; "to give in return or retribution"; "to give in acknowledgment of dependence or obligation: pay"; and "to do (a service) for another."

Merriam–Webster's Collegiate Dictionary 1054 (11th ed. 2003). Black's Law Dictionary further defines it as:

> *n. Hist.* **1.** A payment in money, goods, or services made by a feudal tenant to the landlord. **2.** A return conveyance made by the grantee to the grantor in a fine.... *vb.* **1.** To transmit or deliver <render payment>. **2.** (Of a judge) to deliver formally <render a judgment>. **3.** (Of a jury) to agree on and report formally <render a verdict>. **4.** To pay as due <render an account>.

Black's Law Dictionary 1322 (8th ed. 2004).

9. Because "public utility" is a technical term, we turn to the provisions of the Public Utility Code (Code), 66 Pa.C.S. §§ 101–3316, to define it. Section 102 of the Code defines "public utility" as: "(1) Any person or corporations now or hereafter owning or operating in this Commonwealth equipment or facilities for: ... (iii) Transporting passengers or property as *a common carrier*." 66 Pa.C.S. § 102 (emphasis added). In turn, "common carrier" is defined as:

> Any and all persons or corporations holding out, offering, or undertaking, directly or indirectly, service for compensation to the public for the transportation of passengers or property, or both, or any class of passengers or property, between points within this Commonwealth by, through, over, above, or under land, water, or air, and shall include forwarders, *but shall not include contract carriers by motor vehicles, or brokers*, or any bona fide cooperative association transporting property exclusively for the members of such association on a nonprofit basis.

Section 102 of the Code, 66 Pa.C.S. § 102 (emphasis added). Because the definition of "common carrier" excludes brokers, S & H cannot constitute a public utility under the Code. However, our inquiry does not end here as we still must determine whether S & H's transactions with the carriers it engages satisfies the third clause of Section 301.1(f)(2) of the Act, 53 P.S. § 6924.301(f)(2).

evidence establishes, S & H is a freight-brokerage company which quotes a price to shippers and then steps into shippers' shoes to procure better shipping rates from transport companies. Although S & H communicates to carriers the services its customers require, it stands in the stead of the shipper to get the shipper's goods transported, negotiating a price which will allow S & H to make a profit when compared to the quote it provided. The entity that renders the public utility service is the one which transports the goods, not the one whose business is to negotiate lower prices for that service so it can make money. Simply, S & H facilitates the buying of shipping services but does not, itself, transmit, deliver or furnish transportation of property—the hallmark rendering of any public utility service as a common carrier.[10]

Accordingly, we vacate the trial court's order and remand the case for further proceedings to determine the amount S & H owes for tax years 2007–2011 pursuant to the BPT. *See* note 2.

---

**10.** As the dissent points out, generally, in interpreting the language of the Act precluding local taxation, the taxing provision should be construed strictly against the taxing authority because it is a tax exclusion rather than an exemption. *Lynnebrook and Woodbrook Associates, L.P. ex rel. Lynnebrook Manor, Inc. v. Borough of Millersville*, 600 Pa. 108, 963 A.2d 1261, 1265 (2008). However, that does not mean the rules of interpretation should be used to overcome the plain language of Section 301.1. The dissent focuses on the term "involved" rather than the phrase "involving the rendering of any such public utility service" when, by definition, they are not so involved. *See* footnote 9. If that were the case, all truck stops could not be taxed because they are "involved" in public utility services because they supply the trucks with gas. Moreover, as the concurring opinion points out, because the PUC no longer regu-

*ORDER*

AND NOW, this *15th* day of *October*, 2014, the order of the Court of Common Pleas of York County dated January 6, 2014, is reversed, and this case is remanded for further proceedings in accordance with the foregoing opinion.

Jurisdiction is relinquished.

**CONCURRING OPINION BY Judge LEADBETTER.**

I continue to join in the majority opinion of President Judge Pellegrini. I write separately to point out my view that, even if I were to agree with Judge Simpson's thoughtful dissent, taxpayer could not prevail. This is because the rates of the carriers with whom S & H contracts are not fixed by the Public Utility Commission. Therefore, S & H's transactions are not involved in the rendering of "such" public utility service, i.e., that to which the statutory provision is specifically directed in the first clause of Section 301.1(f)(2).

**DISSENTING OPINION BY Judge SIMPSON.**

I disagree with the Majority's determination that S & H Transport, Inc. (S & H)

lates "the rates and services" of trucking companies, if the dissent's interpretation is adopted, that would lead to the anomalous result that freight brokers would not be subject to the tax but trucking companies would be.

Further, in response to the dissent's comments to the concurring opinion, even if we agree that the term "such" in the third clause refers to the second clause, the analysis does not change. The second clause applies to "any public utility services rendered by any such person or company," with the "such" in that clause referring back to the first clause. The first clause, in turn, applies to persons or companies "whose rates and services are fixed and regulated by the Pennsylvania Public Utility Commission." Therefore, the requirement that the rates and services be fixed and regulated applies, regardless.

was not "involved" in the rendering of any public utility service and thus not entitled to relief from the City of York's (City) business privilege and mercantile tax (BPT) under the third clause in Section 301.1(f)(2) of the Local Tax Enabling Act (Act), Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. § 6924.301.1(f)(2), and Section 343.02(c)(3) of the City Ordinance, Bus. Reg. & Tax § 343.02(c)(3) (incorporating Section 301.1(f)(2) of the Act into the City Ordinance). Therefore, I respectfully dissent.

Section 301.1(f)(2) of the Act provides in pertinent part (with emphasis added):

> *Such local authorities shall not have the authority* by virtue of this act:
>
> \*     \*     \*
>
> (2) *To levy, assess or collect a tax* [1] on the gross receipts from utility service of any person or company whose rates and services are fixed and regulated by the Pennsylvania Public Utility Commission or [2] on any public utility services rendered by any such person or company or [3] *on any privilege or transaction involving the rendering of any such public utility service* . . . .

53 P.S. § 6924.301.1(f)(2) (clause numbers added for reference).

Importantly, the provision of the Act which provides that local authorities "shall not have the authority" to levy certain described taxes, does not involve a tax exemption which would subject the critical statutory words to a strict construction test; rather, "the words 'shall not have authority' have been construed to be a limitation on the power to tax so that doubts relating to their construction are resolved in favor of the taxpayers." *Golden Triangle Broad., Inc. v. City of Pittsburgh,* 31 Pa.Cmwlth. 547, 377 A.2d 839, 842 (1977) (*en banc*), *aff'd* 483 Pa. 525, 397 A.2d 1147 (1979) (citing *Directory Publ'g*

*Co. v. Pittsburgh,* 205 Pa.Super. 423, 211 A.2d 509, 511 (1965)).

Rather than construing the language of the Act in favor of S & H, the Majority does the opposite and interprets the language in favor of the City. Thus, the Majority arrives at the conclusion that S & H was not "involved" in the rendering of any public utility service because S & H is merely a freight brokerage service which quotes a price to shippers and then "stands in the stead of the shipper" to secure better shipping rates from common carrier transport companies. Majority Op. at 602–03. Because S & H "does not, itself, transmit, deliver or furnish transportation of property," the Majority holds that S & H is not involved in the rendering of a public utility service for purposes of the language in Section 301.1(f)(2) of the Act. Majority Op. at 603.

I believe the Majority's construction of the word "involved" is unnecessarily narrow, thereby expanding the City's expressly limited power to tax. Accordingly, the Majority's interpretation fails to follow principles of statutory construction. *Golden Triangle.*

Although S & H functions as a "middleman" between shippers and common carriers, S & H nonetheless prepares the contracts that provide certain prequalified common carriers with opportunities to haul S & H's customers' goods. In so doing, S & H not only selects the common carrier, but negotiates the cost of the public utility services it provides. To that end, S & H's Controller, David Ruiz (Controller), testified that in a typical S & H-brokered transaction, when a common carrier picks up a load from a S & H customer-shipper, it would receive a bill of lading from the shipper as proof of delivery. Notes of Testimony (N.T.), 12/7/13, at 26; Reproduced Record (R.R.) at 59a. The common

carrier then gives the bill of lading to S & H. *Id.* S & H then bills the shipper. *Id.*

Controller further testified that S & H selects the common carrier used and negotiates the carrier's charges for each and every load. N.T. at 42–43; R.R. at 75a–76a. In essence, S & H sells a product, which includes its brokerage services and the selected common carrier. *Id.* Moreover, S & H does not receive any revenue that is not related to freight delivery. N.T. at 27; R.R. at 60a.

Given these circumstances, I believe S & H's transactions with its customer-shippers, which include the selection of the common carrier and the negotiation of the charges for each load, "involve" the rendering of a public utility service by the common carriers.[1] I would not construe the statutory language as to require that S & H itself physically transport its customers' freight. Therefore, I would affirm the order of the respected trial court holding S & H not liable for the City's BPT under Section 301.1(f)(2) of the Act.[2]

---

1. At trial, the parties agreed that a licensed common carrier, which S & H uses to transport the freight, provides a public utility service. Tr. Ct. Slip. Op., 2/27/14 at 4; R.R. at 10a.

2. Similarly, I respectfully disagree with the concurring opinion to the extent that it construes the term "such" public utility service in the *third* clause to refer to "utility service of any person or company whose rates and services are fixed and regulated by the Pennsylvania Public Utility Commission ..." in the *first* clause.

This construction of the ambiguous term "such" ignores the previously described duty to resolve doubts in favor of taxpayers. *Golden Triangle.*

Worse, this construction of the term "such" also ignores the statutory construction tenant known as the last antecedent rule. According to this rule, courts should generally apply qualifying words to the words immediately preceding them, not to other words, phrases or clauses more remote. *See* 1 Pa.C.S. § 1903(b); *Commonwealth v. Packer*, 568 Pa. 481, 798 A.2d 192 (2002). Applying the last antecedent rule, the ambiguous term "such" in the *third* clause would refer to the phrase "any public utility service" in the *second* clause, not to remote language in the *first* clause.