IN THE COMMONWEALTH COURT OF PENNSYLVANIA

S & H Transport, Inc.        :
                        :
        v.              :   No. 242 C.D. 2017
                        :   Argued: September 14, 2017
City of York,           :
             Appellant    :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge


<u>OPINION NOT REPORTED</u>


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI        FILED: October 5, 2017


       The City of York (City) appeals an order of the Court of Common Pleas of York County (trial court) finding that S&H Transport, Inc. (S&H) was entitled to deduct freight and delivery charges from its gross receipts before calculating the business privilege tax due to the City for tax years 2007 through 2011.  For the reasons that follow, we reverse.


## I.

       Section 301.1(a.1)(1) of the Local Tax Enabling Act (LTEA)[1] permits local municipalities, including the City, to impose a business privilege tax (BPT)

---

[1] Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. § 6924.301.1(a.1)(1).

as it provides, in pertinent part, "[a] local taxing authority may levy a tax on the privilege of doing business in the jurisdiction of the local taxing authority. . . ." Article 343.02 of the Codified Ordinances of the City of York (Ordinance) imposes such a BPT, stating "[t]here is hereby levied for the tax year beginning January 1, 1997, a tax for general revenue purposes on the privilege of doing business as herein defined in the City."[2]

Of particular importance to this case, Section 301.1(f) of the LTEA prohibits local authorities from collecting or levying taxes on certain types of goods and transactions, including the following:

> (f) Such local authorities shall not have authority by virtue of this act:
>
> * * *
>
> (12) To levy, assess and collect a mercantile or business privilege tax on gross receipts or part thereof which are
>
> * * *
>
> (ii) *charges advanced by a seller for freight, delivery or other transportation for the purchaser* in accordance with the terms of a contract of sale. . . .

---

[2] Article 343 of the Ordinance, titled "Business Privilege and Mercantile Tax," is available at http://www.yorkcity.org/wp-content/uploads/2017/04/Article-343-Business-Privilege-Mercantile-Tax.pdf, last visited September 19, 2017.

53 P.S. § 6924.301.1(f)(12) (emphasis added). Section 206(J)(2) of the City's Business Privilege and Mercantile Tax Rules and Regulations (Regulations) contains a similar freight delivery exclusion, stating, "[e]xcluded from the Business Privilege and Mercantile Tax are receipts which constitute . . . [f]reight delivery or transportation charges paid by the seller for the purchaser."[3] Regulations § 206(J)(2).

Against this backdrop, we turn to the specific facts of this case.

## II.

## A.

S&H is a Pennsylvania corporation headquartered in the City which provides freight brokerage services. Essentially, S&H receives a freight shipment order from a customer, locates a common carrier to transport the freight shipment, and negotiates a contract with the freight carrier on behalf of the customer. S&H invoices its customer for the full balance owed, including the delivery cost charged by the freight carrier plus S&H's commission for providing the brokerage services. S&H then remits payment to the freight carrier on behalf of the customer and retains the remaining funds as its freight brokerage commission. Because S&H collects the entire balance due from customers, its records reflect gross receipts that include delivery charges despite the fact that S&H is not itself a freight carrier.

---

[3] The Regulations are available at http://www.yatb.com/wp-content/docs/City-of-York-MBP-Ord.pdf, last visited September 19, 2017.

Following an audit, the City discovered that for tax years 2007-2011, S&H claimed the public utility services exception to the BPT found in Section 301.1(f)(2) of the LTEA, 53 P.S. § 6924.301.1(f)(2).[4] The City determined that S&H did not qualify for this exception and issued a notice of assessment in the amount of $188,346.88, plus interest and penalties. S&H appealed and the tax assessment appeal hearing officer affirmed the City's assessment. S&H then appealed to the trial court which held that S&H qualified for the exception, and the City appealed to this Court.

In an opinion issued on October 15, 2014, we held that S&H was not entitled to the exception found in Section 301.1(f)(2) of the LTEA, 53 P.S. § 6924.301.1(f)(2), because S&H was not involved in the rendering of any public utility services. *S&H Transport, Inc. v. City of York*, 102 A.3d 599 (Pa. Cmwlth. 2014). Our Supreme Court affirmed on appeal, concluding "that the rates of the common motor carriers with whom S&H does business are not fixed and regulated

---

[4] Section 301.1(f)(2) of the LTEA provides:

> (f) Such local authorities shall not have authority by virtue of this act:
>
> * * *
>
> (2) To levy, assess or collect a tax on the gross receipts from utility service of any person or company whose rates and services are fixed and regulated by the Pennsylvania Public Utility Commission or on any public utility services rendered by any such person or company or on any privilege or transaction involving the rendering of any such public utility service.

53 P.S. § 6924.301.1(f)(2).

by the [] PUC, and thus the entire exception is inapplicable." 140 A.3d 1, 2 (Pa. 2016). The case was then remanded to the trial court to determine the amount S&H owes for tax years 2007-2011 pursuant to the BPT.

**B.**

Before the trial court on remand, S&H argued, *inter alia*,[5] that it is entitled to deduct freight delivery charges from its taxable gross receipts pursuant to Section 301.1(f)(12) of the LTEA, 53 P.S. § 6924.301.1(f)(12), because it is merely a conduit, and the freight delivery charges completely pass through S&H from its customers to the freight companies. The City admitted that S&H is only a "middleman" as it negotiates transportation between a buyer and seller of goods, and S&H's business is earning commission from these brokerage transactions. However, the City argued that S&H should be taxed not just on its gross earnings but on the gross receipts as reflected in its records – meaning S&H should also be taxed on monies it receives from its customers and passes directly onto freight carriers.

The trial court rejected the City's argument, holding instead that the BPT could only reasonably be interpreted as applying to the gross commissions earned by S&H, not its total gross receipts, because it is not fair to do so. Moreover, because freight delivery or transportation charges paid by a seller for a

---

[5] S&H also argued that it could deduct receipts derived from interstate commerce and receipts attributable to its office located in Spring Garden Township when calculating the BPT it owes to the City. Because these issues are not before the Court on appeal, they will not be addressed in this opinion.

purchaser are to be excluded from the BPT, the trial court found that it does not matter if those charges are paid by the seller itself or, as here, by an agent of the seller. Based on that conclusion, the trial court went on to find that S&H was entitled to deduct freight delivery charges from its gross receipts before calculating the BPT due to the City. The City then appealed to this Court.[6]

### III.

The City argues that S&H does not fall within the freight delivery exception of the LTEA or the Regulations because it is not the seller of goods and the trial court erred in applying a fairness standard to the BPT. We agree.

As to the fairness issue, this Court has repeatedly rejected arguments based on "fairness" when examining issues of taxation. Specifically, in dealing with the BPT, we have stated, "We do not deal here with a matter which may be reconciled by reference to principles of fairness. What tax consequences should flow in the instant case is a matter of legislative intent." *City of Pittsburgh v. Dravo Corporation*, 563 A.2d 940, 944 (Pa. Cmwlth. 1989) (quoting *Kronz Builders, Inc. v. City of Pittsburgh*, 367 A.2d 1144, 1146 (Pa. Cmwlth. 1977)). The trial court here erred by relying on a reasonableness or fairness test to carve out an exception to the BPT, thereby converting a gross receipts tax to a tax based on gross commissions.

---

[6] "Issues of statutory interpretation present questions of law to which a plenary scope of review and *de novo* standard of review apply." *S&H Transport, Inc.*, 102 A.3d at 601, n.4 (citation omitted).

6

To discern legislative intent, we need look no further than the plain language of the Ordinance and Regulations. The BPT is a tax levied upon the privilege of doing business within the City, and the term "business" is defined within the Ordinance as:

> any activity carried on or exercised for gain or profit in the City, including but not limited to, the sale of merchandise or other tangible personalty or the performance of services. As to those taxpayers having a place of business within the City, 'business' includes all activities carried on within the City and those carried on outside the City attributable to the place of business within the City.

Ordinance Article 343.01(a). This broad definition specifically includes the provision of services – not merely the sale of tangible goods – and, thus, includes S&H's freight brokerage services.[7]

The Ordinance goes on to provide the following with respect to calculating the BPT:

> (a) <u>Rate and Basis of Tax.</u> The rate of tax on every dollar of the whole or gross volume of business transacted within the territorial limits of the City shall be calculated as follows:
>
> (1) <u>Business Privilege Tax.</u> On receipts attributable to the performance of service, including any labor and materials entering into or becoming component parts of the service performed, the rate imposed shall be

---

[7] The Ordinance defines the term "service" as "any act or instance of helping or benefitting another for consideration." Ordinance Article 343.01(g).

7

three and one-half mills or three dollars and fifty cents ($3.50) per one thousand dollars ($1,000) of gross volume of business. . . .

Ordinance Article 343.02(a)(1). The term "gross volume of business" is defined as "the money or money's worth received by any vendor in, or by reason of, the sale of goods, wares, merchandise, or services rendered." Ordinance Article 343.01(f). This broad language indicates that the City intended to impose the BPT on *all* gross receipts attributable to corporations such as S&H conducting business within the City, not just to gross profits as was held by the trial court. Moreover, our Supreme Court has held that the similarly broad language of the LTEA evidences the General Assembly's intention to permit local governments to capture a broad range of commercial activity and advances the underlying policy of allowing for taxation as a *quid pro quo* for businesses taking advantage of local governmental benefits such as police, fire and other services. *V.L. Rendina, Inc. v. City of Harrisburg*, 938 A.2d 988, 995 (Pa. 2007) (citing *Gilberti v. City of Pittsburgh*, 511 A.2d 1321 (Pa. 1986)).

In addition, the freight delivery exclusion only applies to "receipts which constitute . . . [f]reight delivery or transportation charges paid by the seller for the purchaser." Regulations § 206(J)(2). The exclusion under Section 301.1(f)(12) of the LTEA similarly only applies to "charges advanced by a seller for freight, delivery or other transportation for the purchaser…." 53 P.S. § 6924.301.1(f)(12). S&H's argument that it qualifies for the exclusion because it is in the business of selling bills of lading to its customers, while imaginative, does not fall within this exception. S&H is neither the seller nor the purchaser in the

8

transactions at issue but merely a broker of services. S&H also is not a freight carrier, does not transport anything and does not sell anything that is transported. It simply does not fall within the plain language of the exclusion.

As for S&H's agency argument, neither the Regulations nor the LTEA contain language indicating that the freight delivery exclusion applies to a seller's agent. The trial court failed to provide any case law supporting such a broad extension of the exclusion, and we are not aware of any.

Moreover, nowhere in the Ordinance or the LTEA is there language carving out an exclusion for funds that merely "pass through" a corporation, and this Court rejected a similar argument in *Wightman Health Center v. Office of the Treasurer, City of Pittsburgh*, 430 A.2d 717 (Pa. Cmwlth. 1981). In that case, a for-profit nursing home argued that Medicare, Medicaid and other third party payments should be excluded from its taxable gross receipts for purposes of the BPT because it realized no profit from those payments, and it was merely a conduit for those payments to flow to independent contractors. We held that such contentions were irrelevant because the ordinance imposed the BPT "on gross receipts without regard to related expenses or the ultimate profitability of the taxpayer's enterprise." *Id.* at 718 (citing *Shelburne Sportswear, Inc. v. Philadelphia*, 220 A.2d 798 (Pa. 1966)).

Accordingly, the decision of the trial court is reversed.

_____
DAN PELLEGRINI, Senior Judge

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

S & H Transport, Inc.                    :
                                         :
                    v.                   :   No. 242 C.D. 2017
                                         :
City of York,                            :
                    Appellant            :

# **O R D E R**

AND NOW, this 5th day of October, 2017, the order of the Court of Common Pleas of York County in the above-captioned case is reversed.


_____
DAN PELLEGRINI, Senior Judge