**[J-99-2018]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| S & H TRANSPORT, INC., | : | No. 8 MAP 2018 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court entered October |
| | : | 5, 2017 at No. 242 CD 2017 reversing |
| v. | : | the Order of the Court of Common |
| | : | Pleas of York County, Civil Division, |
| | : | dated February 7, 2017, entered |
| CITY OF YORK, | : | February 9, 2017 at No. 2012-SU- |
| | : | 4143-54 |
| Appellee | : | |
| | : | ARGUED: December 5, 2018 |

**OPINION**

**JUSTICE TODD**                                          **DECIDED: July 17, 2019**

In this appeal, we are asked to consider whether the Business Privilege and Mercantile Tax ("BPT") imposed by Appellee the City of York ("City"), must be paid by Appellant, S & H Transport, Inc. ("S & H"), a freight broker, on the total yearly amount of money S & H receives from its customers for arranging shipping of commercial goods with freight carriers on their behalf, where, after deducting its commission, S & H remits the remaining money to the freight carriers as payment of their shipping fees. After careful review, we find that the amount of money S & H collects and passes on to freight carriers for their fees is excluded from taxation under the City's BPT. We therefore reverse the order of the Commonwealth Court.

## I. Background and Procedural History

S & H is a freight brokerage company which arranges freight delivery for sellers of commercial goods, via a common carrier.[1] Freight brokers do not directly ship or transport freight; rather, they function as intermediaries which facilitate the shipment of goods. *Reiter v. Cooper*, 507 U.S. 258, 261 (1993); *cf.* 49 U.S.C. § 13102(2) (defining "[b]roker" as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation."). They are the "connecting link between shippers and carriers, uniting shippers who have cargo to deliver with carriers who have available motor transportation." Jeffrey S. Kinsler, *Motor Freight Brokers: A Tale of Federal Regulatory Pandemonium*, 14 Northwestern Journal of International Law and Business 289 (1994).

As explained by the Commonwealth Court in its opinion in this matter, freight brokerage is a process in which a freight broker such as S & H receives an order from a customer ("seller") who desires to ship commercial goods to a buyer. The broker then contracts with a common carrier to perform this task. Once the goods have been delivered to the buyer, the broker will invoice the seller for the amount of the shipping fee charged by the common carrier, as well as its broker's commission. When the seller pays the amount of the invoice to the broker, the broker remits the shipping fee to the common carrier, while retaining its commission. *S & H Transport, Inc. v. City of York*, 174 A.3d 679, 680 (Pa. Cmwlth. 2017).

---

[1] A common carrier is "[a] commercial enterprise that holds itself out to the public as offering to transport freight or passengers for a fee . . . [and] generally [is] required by law to transport freight or passengers without refusal if the approved fare or charge is paid." Black's Law Dictionary 256 (10th ed. 2014).

S & H is headquartered in York, Pennsylvania, and, thus, like all businesses within that City, it is obligated to pay that City's BPT, which was created by an ordinance passed by York City Council, pursuant to the authorization of the Local Tax Enabling Act ("LTEA").[2]

Briefly, by way of background, the LTEA is the means by which the General Assembly has conferred on local municipalities the authority to impose a broad range of taxes other than just real estate taxes, which were, historically, the means by which their governments derived revenue to provide necessary public services to their residents. Joseph C. Bright, *Summary of Pennsylvania Jurisprudence*, Taxation § 17:1 (2018). As a general matter, the LTEA authorized local municipalities to enact taxes on tangible objects or activities which the Commonwealth does not itself tax, subject to certain legislatively specified restrictions. After the LTEA became law in 1966, various municipalities utilized the authority granted to them by this enactment to levy taxes on the gross receipts of businesses within their jurisdiction for "the privilege of doing business." 53 P.S. § 6924.301.1(a.1)(1). As our Court has explained, the LTEA allowed such local taxation "as a *quid pro quo* for businesses advantaging themselves of local governmental benefits, including the availability of police, fire, and other services." *V.L. Rendina, Incorporated v. City of Harrisburg*, 938 A.2d 988, 995 (Pa. 2007).[3]

---

[2] Act of December 31, 1965, P.L. 1257, No. 511, 53 P.S. §§ 6924.101 to 6924.901.

[3] In 1988, as part of a broad initiative to fundamentally restructure the manner in which municipalities collect local taxes, the legislature enacted the "Local Tax Reform Act," Act of December 13, 1988, P.L. 1121, No. 145. Section 533 of that Act, 72 P.S. § 4750.533, prohibited municipalities from enacting new ordinances levying business privilege taxes on the gross receipts of businesses after November 30, 1988; however, it preserved the business privilege taxes which municipalities had already enacted, but capped their rates to those which were in effect on that date. The majority of the provisions of the Local Tax Reform Act were set to take effect upon the passage of a constitutional amendment to implement it, but the voters of the Commonwealth rejected this amendment in the primary election of May 16, 1989. Subsequently, the General Assembly repealed the majority of the Local Tax Reform Act, except for Section 533 and a few other provisions.

Although municipalities were authorized to impose such "business privilege" taxes, the General Assembly also excluded from this taxing power certain enumerated objects or activities. *See generally* 53 P.S. § 6924.301.1. Pertinent to the issues we are considering in the case at bar, municipalities are forbidden "[t]o levy, assess and collect a mercantile or business privilege tax on gross receipts or part thereof which are: . . . (ii) charges advanced by a seller for freight, delivery or other transportation for the purchaser in accordance with the terms of a contract of sale." *Id.* § 6924.301.1(f)(12)(ii).

As noted, York enacted its BPT via ordinance ("BPT Ordinance"), which provides, in pertinent part:

> *LEVY; RATE; EXEMPTIONS; BUSINESS VOLUME.*
> There is hereby levied . . . a tax for general revenue purposes on the privilege of doing business as herein defined in the City.

BPT Ordinance, § 343.02. The tax is imposed on "the whole or gross volume of business transacted within the territorial limits of the City." *Id.* § 343.02(a). The BPT Ordinance further defines these terms in the following fashion:

> (a) "*Business*" means any activity carried on or exercised for gain or profit in the City, including but not limited to, the sale of merchandise or other tangible personalty or the performance of services. As to those taxpayers having a place of business within the City, "business" includes all activities carried on within the City and those carried on outside the City attributable to the place of business within the City.
>
> * * *
>
> (f) "*Gross volume of business*" means the money or money's worth received by any vendor in, or by reason of, the sale of goods, wares, merchandise, or services rendered.
>
> (g) "*Service*" means any act or instance of helping or benefitting another for consideration.

*Id.* § 343.01.

In 2004, pursuant to the BPT Ordinance, the City promulgated an interpretative regulation ("BPT Regulation") to "provide a formal interpretation" of the BPT Ordinance, and to establish criteria for its administration. *See* BPT Ordinance, Introduction. The section of the BPT Regulation applicable to the instant matter defines the "gross receipts" of a business subject to taxation as:

> Cash, credits or property of any kind received in exchange for merchandise sold or services performed or other business activity conducted within or attributable to the City, without deduction there from [sic] on account for costs of property or merchandise sold; materials, labor or services furnished or used; interest or discount paid; or any other business related expense, as permitted by regulation.

BPT Regulation § 201. The Regulation further describes "sale" as: "[t]he passing of ownership from a seller to a buyer for a price, or for a consideration," and "service" to mean "any act or instance of helping or benefiting another for consideration." *Id.* Of particular relevance here, the Regulation also excludes from taxation of a business's gross receipts any "[f]reight delivery or transportation charges paid by the seller for the purchaser." *Id.* § 206(j)(2).[4]

In 2011, an audit of S & H's business privilege tax returns conducted by the City revealed that, for the tax years 2007-2011, S & H claimed that, under the "public utility service" exemption of the LTEA,[5] it was entitled to deduct from its gross receipts the shipping fees it collected. The City took the position that S & H was not entitled to claim this exemption and, consequently, issued a tax assessment against S & H in the amount of $118,346.88, plus interest and penalties. S & H appealed to the Court of Common Pleas of York County, arguing that it was entitled to claim this exemption, and raising

---

[4] Although the BPT Ordinance contains the same definition of "service" as does the BPT Regulation, it does not define "sale".

[5]  53 P.S. § 6924.301.1(f)(2).

other arguments as to why it was not subject to the BPT. The trial court concluded that S & H qualified for the "public utility service" exemption of the LTEA, and vacated the assessment order on that basis.[6]

The City next appealed to the Commonwealth Court, which reversed the trial court based on its finding that S & H was ineligible for the exemption because it was not rendering a public utility service through its business activities. *S & H Transport, Inc. v. City of York*, 102 A.3d 599 (Pa. Cmwlth. 2014). S & H further appealed that decision to our Court, and we unanimously upheld the Commonwealth Court's decision. *S & H Transport, Inc. v. City of York*, 140 A.3d 1 (Pa. 2016). However, we remanded the matter to the trial court for it to rule on S & H's other challenges to the imposition of the BPT, which it had not previously addressed.

One of these challenges, which is the subject of the present appeal, was S & H's claim that the City improperly included in its calculation of S & H's gross receipts the amount of shipping fees it was paid by sellers utilizing its services, which it then remitted to the carriers it hired to deliver the sellers' products, in addition to the commissions it earned for arranging the transactions. S & H maintained that it was only responsible for paying the gross receipts tax on the portion of the total sum paid to it by the seller of the products that S & H retained as its commission. The City, by contrast, contended that S & H was a middleman which arranged transportation for sellers of goods and, as such, all money it received as a result of performing this service was taxable as gross receipts, regardless of the fact that S & H passed the shipping fees it collected on to the carrier.

---

[6] The Honorable John W. Thompson adjudicated this matter before his retirement from the Court of Common Pleas of York County.

The trial court ruled in favor of S & H.[7] It interpreted the BPT Ordinance as applying solely to the gross revenue earned by S & H for acting as an agent of the seller — its commissions. The court viewed S & H as merely a "conduit" of the shipping fees charged by the carrier and paid by the seller. Trial Court Opinion, 2/9/17, at 6. The court analogized this arrangement to one where a real estate closing company acts as a conduit of monies related to the sale of the property, like mortgage proceeds and down payment funds, which it merely passes through to other parties to the sale, but does not itself retain. The court considered it "patently unfair" to impose the BPT on such monies which merely passed through S & H's accounts. *Id.*

The trial court also noted that the BPT Regulation "specifically provides for delivery or transportation charges paid by a seller for a buyer to be excluded." *Id.* In the court's view, it was immaterial for purposes of this exclusion whether the seller paid the charges directly or "by an agent of the seller, *i.e.*, S & H, acting as a conduit for the seller." *Id.*

The City appealed to the Commonwealth Court, which reversed in a unanimous published opinion authored by Senior Judge Dante Pellegrini.[8] *S & H Transport, Inc. v. City of York*, 174 A.3d 679 (Pa. Cmwlth. 2017). First, the Commonwealth Court emphasized that it has repeatedly held that fairness is not the standard utilized in interpreting tax statutes; rather, only the legislative intent to include or exclude the proceeds of particular business activities from a BPT is relevant. Thus, the Commonwealth Court found that the trial court erred in evaluating the tax for fairness or reasonableness.

---

[7] Due to Judge Thompson's retirement, the matter was reassigned to Judge Stephen P. Linebaugh.

[8] Judge Pellegrini was joined by Judges Kevin Brobson and Patricia McCullough.

In order to ascertain the legislative intent regarding the taxability of the monies at issue under the BPT, the Commonwealth Court examined what it considered to be the governing provisions of the Ordinance and the Regulation. The court observed that, under the BPT Ordinance, the tax is levied on all "business" occurring within the City, including "any activity carried on, or exercised for gain or profit, in the City, including . . . the provision of services," and, thus, encompassed S & H's freight brokerage services. *Id.* at 682 (quoting BPT Ordinance § 343.01(a)).

Next, the Commonwealth Court noted that the BPT is assessed on the "gross volume of business," which is further defined by the BPT Ordinance as "the money or money's worth received by any vendor in, or by reason of, the sale of goods, wares, merchandise, or services rendered." *Id.* (quoting BPT Ordinance § 343.01(f)). The court found that "[t]his broad language indicates that the City intended to impose the BPT on *all* gross receipts attributable to corporations such as S & H conducting business within the City, not just to gross profits as was held by the trial court." *Id.* (emphasis original).

The Commonwealth Court further determined that the shipping fees received by S & H were not excludable under the BPT Regulation's exclusion for "[f]reight delivery or transportation charges paid by the seller for the purchaser." BPT Regulation § 206(j)(2). Likewise, the court concluded that the shipping fees were not barred from taxation under Section 6924.301.1(f)(12) of the LTEA, which, as noted above, prohibits local municipalities like the City from taxing gross receipts comprised of "charges advanced by a seller for freight, delivery or other transportation for the purchaser in accordance with the terms of a contract of sale." *S & H Transport,* 174 A.3d at 683 (quoting 53 P.S. § 6924.301.1(f)(12)).

With respect to both the BPT Regulation and the LTEA, the court observed that, in the transactions at issue, S & H, acting in its capacity as a broker, was neither the seller

nor purchaser of the goods which were the subject of the transactions, nor did it transport those goods; hence, the court reasoned that neither the plain text of the LTEA, nor the BPT Regulation, permitted S & H to exclude the shipping fees it received. Additionally, the court found no legal authority to support the trial court's treatment of an agent of the seller as if *it* were the seller, in order to allow the agent to claim the seller's tax exemption.

Lastly, the court observed that it had previously rejected a similar argument that money which merely passed through a business entity was exempt from a business privilege tax because the business received no profit on it. *Id.* at 683 (*citing Wightman v. City of Pittsburgh*, 430 A.2d 717, 718 (Pa. Cmwlth 1981) (rejecting nursing home's argument that it was exempt from paying Pittsburgh's business privilege tax on Medicaid and Medicare monies, which it passed through in the form of payment to private contractors that the nursing home hired to perform services, on the basis that the BPT is imposed "on gross receipts without regard to related expenses or the ultimate profitability of the taxpayer's enterprise")).

S & H filed a petition for allowance of appeal, which our Court granted as to the following issues, as set forth by S & H:

> 1. Whether a freight broker is permitted to exclude freight delivery charges, to which the broker has no right to retain but rather utilizes solely for the purposes of purchasing transportation services for its customers, from its taxable gross receipts under the City of York's Business Privilege and Mercantile Tax Ordinance?
>
> 2. Whether a municipality may rely on more narrowly tailored exclusionary language contained in the Local Tax Enabling Act, 53 P.S. 5924.101 *et seq.*, to interpret and enforce a more broadly worded exclusion contained in the municipalit[y's] ordinances.

*S & H Transport, Inc. v. City of York*, 182 A.3d 994 (Pa. 2018) (order).

## II. Arguments of the Parties

S & H first claims that the LTEA and the BPT Regulation create what it refers to as "freight delivery exclusions," and, as tax exclusions, they must be construed against York as the taxing body. Accordingly, S & H argues that the Commonwealth Court erred in construing these provisions against it as the taxpayer.

In this regard, S & H notes that, under federal laws which govern the interstate shipping of goods, no transportation charges may be levied until delivery of the goods is confirmed through issuance of a bill of lading[9] by the carrier. S & H asserts that, as a broker, it is required by federal law to retain the bill of lading, and document that it collected the shipping charges from the shipper and paid them to the carrier. According to S & H, the Pennsylvania Public Utility Commission also requires that charges collected by a broker for shipping be paid in full to the carrier without deduction for its fees, and that it must post a bond to ensure such payment. Thus, in S & H's view, these laws and regulations establish that it has no legal right to possess money paid by a shipper to it for the delivery of the shipper's goods, so these monies do not qualify as a "receipt" under either the LTEA or the BPT Ordinance.

With respect to the BPT Regulation, S & H argues that the freight delivery exclusion, as set forth in the Regulation, applies broadly to all "freight delivery or transportation charges paid by the seller for the purchaser," and it does not limit the class of individuals who can be considered sellers to only those who are sellers of goods, as the Commonwealth Court found. S & H Brief at 11 (quoting BPT Regulation § 206(j)(2)). Indeed, S & H points out that the Federal Motor Carrier Act defines a "freight broker," such as itself, as a person who "sells, offers for sale, negotiates for, or holds itself out . . . as selling . . . transportation by motor carrier for compensation," *id.* (quoting 49 U.S.C.

---

[9] A bill of lading is "the receipt a common carrier gives to a shipper for goods given to the carrier for transportation." Jack P. Friedman, *Barron's Dictionary of Business Terms* 52 (2d ed. 1994).

§ 13102), so it, as a broker, can be considered a seller for purposes of this exclusion. S & H asserts that the BPT Ordinance itself indicates that the tax can be levied on the monetary value of services rendered, so, from its perspective, it is engaged in the type of activity — furnishing a service — which makes it subject to the tax, but also eligible for this exclusion. *Id.* at 12 (quoting BPT Ordinance § 343.02(a)(1)).[10]

S & H contends that, because the plain language of the BPT Regulation does not limit the class of sales covered by the exclusion to only the sale of goods, in order to justify its interpretation of the Regulation, the Commonwealth Court improperly relied on the narrower exclusionary language in Section 6924.301.1(12) of the LTEA, which refers only to contracts for the sale of goods. Such a construction, S & H argues, is at odds with the principle that these types of enactments should be construed against the taxing authority.

The City responds by arguing that, in order for the freight delivery exclusion contained in the BPT Regulation to apply, "[a]s is the case with the LTEA . . . the entity claiming the exclusion must be a seller who is paying the transportation charges for the purchaser." City Brief at 3. The City offers as an example a situation where a manufacturer/seller of a product agrees to pay the upfront shipping costs to a purchaser in order for the product to be delivered. Thereafter, once delivery of the product is complete, the seller bills the purchaser for the product plus the shipping costs. In the City's view, the purpose of the exclusion is to ensure that the shipping costs reimbursed to the seller are not included in the seller's gross receipts since they essentially represent a loan. The City asserts that S & H is not similarly situated.

---

[10] S & H contends that, if the Commonwealth Court's interpretation is left to stand, it would have federal constitutional ramifications. However, as S & H acknowledges, we did not accept for review any issue concerning whether the City's BPT tax is unfairly apportioned such that it violates the United States Constitution. Consequently, we will not further address this portion of S & H's argument.

In furtherance of its argument that the BPT Regulation does not permit the exclusion of these shipping fees, in that they were not sales of commercial goods, the City notes that the terms "sales" and "services" are both uniquely defined in the BPT Ordinance as two different types of activities which are each individually subject to taxation — *i.e.*, sales of tangible things, and services performed. *Id.* at 5 (citing BPT Ordinance § 343.01(a), (g)). It notes that the BPT Ordinance maintains this dichotomy between "sales" and "services" in the definition of "gross volume of business," which the BPT Ordinance defines as "the money or money's worth received by any vendor in, or by reason of, the sale of goods, wares, merchandise, or services rendered." *Id.* (quoting BPT Ordinance § 343.01(f)). According to the City, this distinct treatment shows that whenever "sale" is referred to elsewhere in the Regulation, it must be understood to mean the transfer of goods for consideration. The City adds that, had it wished to treat sales as encompassing the sale of services as well as goods, it could easily have said so and would not have gone through the bother of defining the two terms separately.

Moreover, the City asserts that S & H cannot be considered a "seller" under the BPT Regulation, given that its brokerage business procures services, but sells no goods. As the City highlights, the term "sale" is specifically defined in the Regulation as "the passing of ownership from a seller to a buyer for a price," which contemplates the idea that there must be transfer of title to a tangible object in order for the transferor to be deemed a "seller" under the freight delivery exclusion. *Id.* at 8 (quoting BPT Regulation § 201). The City proffers that this is also consistent with how Black's Law Dictionary defines the term "seller," as "someone who sells or contracts to sell goods; a vendor, UCC §2-103(1)(d)," or "the transferor of property in a contract of sale." *Id.* (quoting Black's Law Dictionary (10th ed. 2014)). By contrast, the term "[s]ervice" is defined in the Regulation

as "any act or instance of helping or benefiting another for consideration," *id.* (quoting BPT Regulation § 201), which describes S & H's business activity.

Additionally, and in answer to S & H's assertions, the City argues the definition of "freight broker" as that term is used in the Federal Motor Carrier Act has no applicability here, as the term "seller" is not ambiguous, nor is it a "term of art" which has acquired unique meaning, and, thus, resorting to technical definitions from unrelated statutes is unnecessary and unhelpful. Moreover, the City points out, even if the term "seller" could include the sale of services, here, it is the common carrier that actually sells the shipping services, not a broker like S & H.

To S & H's broader argument, the City notes that there is no express provision in the BPT Ordinance excluding so-called "conduit payments" received by a business and forwarded to a third party from the tax. City Brief at 11. The City reminds that this tax is a tax on the privilege of doing business in a particular community and is imposed on "*every dollar of the whole or gross volume of business* transacted within the territorial limits of the city." *Id.* (quoting BPT Ordinance § 343.02(a)) (emphasis original). Consequently, the City maintains that the only relevant and dispositive inquiry is whether a business receives money from a particular activity, not whether it profits from doing so.

Lastly, the City denies that the Commonwealth Court improperly rested its interpretation of the freight delivery exclusion afforded by the Regulation on Section 6924.301.1(f)(12) of the LTEA, inasmuch as that tribunal never discussed the contract of sale language contained in that section in arriving at its conclusion that, under the BPT Regulation, a business must be a seller of goods to qualify for this exclusion. Rather, the

City contends, the Commonwealth Court interpreted the BPT Regulation according to the plain and common meaning of its words.[11]

### III. Analysis

The issues presented for our consideration involve the interpretation of statutes and ordinances, which are legislative enactments, and the interpretation of an administrative regulation promulgated to implement a municipal ordinance. These are all questions of law of which our standard of review is *de novo* and our scope of review is plenary. *Verizon v. Commonwealth*, 127 A.3d 745, 753 n.12 (Pa. 2015); *Popowsky v. Public Utility Commission*, 910 A.2d 38, 48 (Pa. 2006). In interpreting both statutes and ordinances, we follow the principles set forth in the Statutory Construction Act ("SCA"), 1 Pa.C.S. §§ 1921-39. *Williams v. City of Philadelphia*, 188 A.3d 421, 428 (Pa. 2018); *Council of Middletown Twp., Delaware County v. Benham*, 523 A.2d 311, 315 (Pa. 1987).

---

[11] The City of Allentown has filed an *amicus* brief in support of the City of York, noting that it has a similar ordinance, and that multiple business entities located in Allentown are seeking to utilize the exclusions furnished by the LTEA; hence, it seeks clarity from our Court regarding this question. Contrary to the City's position, it concludes the Commonwealth Court's decision relied on Section 6924.301.1(f)(12) of the LTEA. Allentown contends that the Commonwealth Court properly looked to the LTEA because the Regulation was at odds with the LTEA, and, under the doctrine that an administrative rule cannot contravene a legislative enactment, the LTEA takes precedence. Thus, Allentown reasons that, because the term "contract of sale," as used in Section 6924.301.19(f)(12) of the LTEA, refers to purchased goods or merchandise, shipping costs should be viewed as only "incidental" costs attendant to a retail transaction involving goods or merchandise which must be shipped, akin to the collection of sales taxes. Amicus Brief at 7-8. Allentown notes, however, that S & H does not actually sell anything which requires shipping, nor is it a common carrier. Allentown points out that the fact that S & H is required to collect the shipping fees under federal law establishes that doing so is part of its normal business activities, and, hence, like all other business activities it is subject to the tax.

Allentown also proffers a novel argument that the freight delivery exclusion renders the LTEA violative of the Uniformity Clause of our state charter. That argument, however, is beyond the scope of our allocatur grant.

Likewise, as a general matter, we employ the interpretative principles of the SCA to construe a regulation implementing a legislative enactment. *Freedom Medical Supply v. State Farm Fire and Casualty Company*, 131 A.3d 977, 984 (Pa. 2016); *Slippery Rock Area School District v. Pennsylvania Cyber Charter School*, 31 A.3d 657, 667 (Pa. 2011).

The primary goal of this interpretive process is "to ascertain and effectuate the intention" of the governmental body enacting a statute or ordinance, or promulgating a regulation. 1 Pa.C.S. § 1921; *Snyder Brothers, Inc. v. PUC*, 198 A.3d 1056, 1071 (Pa. 2018); *Council of Middletown Township*, 523 A.2d at 315; *Slippery Rock Area School District*, 31 A.3d 663. Thus, we will interpret the terms of a statute, ordinance, or regulation in accordance with their plain meaning, unless those enactments are ambiguous. *Williams*, 188 A.3d at 429; *Council of Middletown Township*, 523 A.2d at 315; *Pelton v. Commonwealth Department of Welfare*, 523 A.2d 1104, 1108 n.3 (Pa. 1987). In situations where the language of the statute, ordinance, or regulation is ambiguous, the additional factors enumerated in Section 1921(c) of the SCA may be employed to ascertain the meaning of its provisions.

Whenever a tax enactment is found to be ambiguous, the SCA provides special rules of construction. *See* 1 Pa.C.S. § 1928(b)(3) (requiring strict construction of "[p]rovisions imposing taxes"); *id.* § 1928(b)(5) (mandating strict construction of "provisions exempting persons and property from taxation"). However, these rules of strict construction will be employed only if all other efforts at interpreting the enactment using the tools of statutory construction enumerated in Section 1921(c) "yield no definitive conclusion." *Snyder Brothers Inc.*, 198 A.3d at 1073 n.20 (quoting *Dechert L.L.P. v. Commonwealth*, 998 A.2d 575, 584 n.8 (Pa. 2010)).

As a general matter, an enactment which imposes a tax is strictly construed in favor of the taxpayer against the taxing body. *Greenwood Gaming v. Commonwealth*

*Department of Revenue*, 90 A.3d 699, 711 (Pa. 2014).  Likewise, a provision of a tax enactment that excludes certain property, income, or activities from being subject to the tax is also to be strictly construed in favor of the taxpayer and against the taxing body. *AMP Incorporated v. Commonwealth*, 852 A.2d 1161, 1167 (Pa. 2004).

In our Commonwealth, the foundation of a municipality's authority to levy a tax, and the permissible scope of that tax, is based on the grant of such power by the General Assembly:

> Absent a grant or a delegation of the power to tax from the General Assembly, no municipality . . . has [a]ny power or authority to levy, assess or collect taxes. To determine whether a municipality possesses the power to tax and, if so, the extent of such power, recourse must be had to the acts of the General Assembly.

*Mastrangelo v. Buckley*, 250 A.2d 447, 452–53 (Pa. 1969).  Hence, because the City's authority to subject particular business activities to its BPT is conferred by the LTEA, and concomitantly circumscribed by any restrictions contained therein, our analysis necessarily begins with a consideration of whether the controlling provision of the LTEA, Section 6924.301.1(f)(12), prohibits the City from imposing the BPT on the shipping fees S & H collects.  The City's authority to impose its BPT on these monies cannot, as the City has argued, be determined by solely examining its own BPT Ordinance or Regulation, inasmuch as they are subordinate to the LTEA.

As set forth above, Section 6924.301.1(f)(12)(ii) of the LTEA explicitly forbids a municipality such as the City from taxing "charges advanced by a seller for freight, delivery or other transportation for the purchaser in accordance with the terms of a contract of sale."  53 P.S. § 6924.301.1(f)(12)(ii).  Rejecting S & H's argument to the contrary, the Commonwealth Court found that this prohibition did not apply, inasmuch as S & H was "neither the seller nor the purchaser in the transactions at issue but merely a broker." *S & H Transport*, 174 A.3d at 683.  We discern no error in this conclusion, given that there

was no "contract of sale" between S & H and a buyer of goods under which S & H advanced the costs of shipping such commodities to the buyer. Although the term "contract of sale" is not defined in the LTEA, it is well understood in the context of commercial transactions to mean a contract for the sale of goods. *See, e.g.*, 13 Pa.C.S. § 2106 (defining "[c]ontract for sale," for purposes of the Pennsylvania Uniform Commercial Code, as including "both a present sale of goods and a contract to sell goods at a future time."). As the Commonwealth Court found, and as S & H admits, it is not a seller of goods, nor does it ship any goods itself; rather, it contracts with common carriers to perform that task, and there is no record evidence to show that it, at any time, advanced monies as part of these transactions. Consequently, Section 6924.301.1(f)(12)(ii) of the LTEA did not bar the City from imposing its BPT on the monies S & H received from its brokered shipping arrangements.

This does not, however, end our inquiry. While all local taxing ordinances must comport with the restrictions imposed by the LTEA, there are no provisions in the LTEA which *mandate* that a local municipality adopt a specific kind of tax, nor does the LTEA limit the exclusions a municipality may afford taxpayers if it elects to adopt such a tax. Thus, we must consider, as did the Commonwealth Court, whether the terms of the City's BPT Regulation excluded the shipping fees S & H collected from the gross receipts tax.

First, we reject S & H's argument that the shipping fees it collected and then remitted to the carrier were not "gross receipts" within the meaning of that term as it is used in the Regulation. Section 201 of the BPT Regulation defines "gross receipts" in relevant part to mean "[c]ash . . . received in exchange for . . . services performed or other business activity conducted within or attributable to the City, without deduction there from [sic] on account for costs of property or merchandise sold; materials, labor or services furnished or used; interest or discount paid; or any other business related expense, as

permitted by regulation." BPT Regulation § 201. The BPT Regulation further defines "business" as "any activity carried on or exercised for gain or profit in the City, including but not limited to, the sale of merchandise or other tangible personalty or the performance of services." *Id.* Finally, "service" is defined in the BPT Regulation as "any act or instance of helping or benefitting another for consideration." *Id.*

The record in this matter supports the Commonwealth Court's conclusion that S & H was carrying on a business activity within the City, whereby it provided a service to its customers of arranging shipping of their goods, and that it did so for consideration — namely, payment in exchange for the performance of those services, albeit those payments included both the cost of shipping and its commission. Therefore, the monies paid to S & H by its customers constituted taxable gross receipts within the meaning of Section 201 of the BPT Regulation and was subject to assessment of the tax.

However, with respect to the applicability of the "freight delivery exclusion" afforded by Section 206(j)(2) of the BPT Regulation, we conclude S & H must prevail. This section excludes from the BPT "gross receipts which constitute . . . [f]reight delivery or transportation charges *paid by the seller for the purchaser.*" BPT Regulation § 206(j)(2) (emphasis added). A comparison of the plain terms of BPT Regulation § 206(j)(2) and Section 6924.301.1(f)(12)(ii) of the LTEA, indicates that the class of gross receipts excluded from taxation by the BPT Regulation is broader than that excluded by the LTEA. The BPT Regulation excludes all freight delivery charges "paid" by a seller for the purchaser, whereas the LTEA specifically restricts the application of the exclusion to only those shipping costs "advanced" by a seller to a purchaser pursuant to the terms of a contract of sale. Thus, the BPT Regulation allows exclusion of all shipping costs paid by a seller for a purchaser at any time, while the LTEA exclusion requires that a seller

*advance* the costs of shipping to a purchaser according to the provisions of a contract of sale, which means that those costs be paid prior to the shipping taking place.[12]

We acknowledge the credibility of the City's argument, which is endorsed by the dissent, *see* Dissenting Opinion (Dougherty, J.), that the BPT Regulation's separate definition of sales and services, and its treatment of the two activities disjunctively in its definition of "gross volume of business," *see* BPT Regulation § 201, indicates that, for purposes of the BPT Regulation, the two terms were intended to describe separate activities — the selling of goods and the provision of services. Thus, it is plausible that the term "seller" in Section 206(j)(2) of the BPT Regulation could be read as referring only to a seller of goods; however, critically, this restrictive definition is not the only reasonable interpretation of this exclusion.

S & H's argument that the term "seller" as used in Section 206(j)(2) could be read broadly enough to encompass its core business activities — the selling of shipping services — is equally reasonable. Significantly, though the BPT Regulation initially defines sales and services separately, nothing in the plain language of the exclusion created by Section 206(j) limits the class of sellers entitled to claim the exclusion to only those businesses which sell physical goods or merchandise. As S & H has contended, because the nature of its brokerage business is the selling of transportation services to shippers of goods, it is reasonable for it to be considered a "seller" for purposes of Section 206(j). *Cf.* 49 U.S.C. § 13102(2) (defining broker as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells . . .

---

[12] It is for these reasons we cannot agree with our colleagues that the exclusion created by the BPT Regulation merely mirrors the exclusion established by the LTEA. *See* Concurring Opinion (Saylor, C.J.) at 1 (this exclusion "merely effectuates the parallel requirement for exclusion of the LTEA"); Concurring and Dissenting Opinion (Baer, J.) at 2 (the analysis of this exclusion is "[s]imilar to the analysis of the parallel provision of the LTEA").

transportation by motor carrier for compensation"). Consequently, because S & H pays the delivery or transportation costs for the purchaser of its services — the shipper of goods or commodities — to the common carrier who transported those items to the shipper's designated recipient; accordingly, for purposes of Section 206(j), S & H may be deemed to have paid the shipping costs "for the purchaser." BPT Regulation § 206(j).

Given that both suggested interpretations of Section 206(j) offered by the parties are reasonable under the circumstances, we find this provision to be ambiguous. *See Snyder Brothers*, 198 A.3d at 1073. Notably, the City, which drafted and adopted this exclusionary regulation, has not presented us with any legislative history to support its suggested construction, nor has the City argued the applicability of any of the other factors in Section 1921(c) of the SCA which would favor one interpretation over the other. Hence, because the BPT Regulation uses the ambiguous term "seller," which we conclude is broad enough to be read as to include both a seller of physical merchandise and a seller of services, and due to the fact the BPT Regulation's "freight delivery exclusion" is an exclusion of income from taxation, the principles of construction set forth in Section 1928 of the SCA control. We therefore construe this regulation in favor of S & H, as the taxpayer, and against the City, inasmuch as the General Assembly has directed that the taxpayer is entitled to the benefit of any ambiguity in such situations. Accordingly, we conclude that S & H was entitled to exclude from its gross receipts the amount of the delivery costs it was paid by shippers who purchased its services.

For all of the aforementioned reasons, we reverse the order of the Commonwealth Court. Jurisdiction relinquished.

Justice Donohue, Wecht and Mundy join the opinion.

Chief Justice Saylor files a concurring opinion.

Justice Baer files a concurring and dissenting opinion.

Justice Dougherty files a dissenting opinion.