# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | No. 66 C.D. 2025 |
| v. | : | |
| | : | Argued: April 13, 2026 |
| Robert E. Weaver, Jr., | : | |
| Appellant | : | |

BEFORE:   HONORABLE ANNE E. COVEY, Judge
          HONORABLE LORI A. DUMAS, Judge
          HONORABLE STELLA M. TSAI, Judge

## _OPINION NOT REPORTED_

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                    **FILED: May 6, 2026**

Robert E. Weaver, Jr. (Appellant) appeals from the order entered in the Court of Common Pleas of Schuylkill County (trial court), which found him guilty of violating Section 108.5 of the Property Maintenance Code (Code) of the City of Pottsville. Appellant challenges the sufficiency of evidence and whether Section 108.5 is unconstitutionally vague. We reverse.

## I. BACKGROUND[1]

Appellant is part owner and president of Black Rock Brewing

---

[1] We state the facts in the light most favorable to the Commonwealth as the prevailing party. *Commonwealth v. Chisebwe*, 310 A.3d 262, 268 (Pa. 2024). This decision resolves two substantially similar appeals, although we did not consolidate the cases for disposition. This appeal arises under Docket No. CP-54-SA-141-2024, docketed in this Court at 66 C.D. 2025, and resolves the July 6, 2024 violation. The other appeal arises under Docket No. CP-54-SA-108-2024, docketed in this Court at 70 C.D. 2025, and resolves the March 16, 2024 violation. We use the Pa.R.Crim.P. 114 notice dates. We note an ongoing federal lawsuit involving Appellant and the operative facts of this case. *See* Am. Compl., *Black Rock Brewing Co. v. City of Pottsville* (M.D. Pa., No. 25-CV-1671, filed Oct. 7, 2025).

Company, LLC, which owns a Pottsville property. On the property is a building that houses a brewpub and two courtyards, one on each side of the building. The building and courtyards share a single address, 325 South Centre Street, and a single tax identification number and deed.

On May 17, 2023, a fire broke out in the brewpub's kitchen. Pottsville's code official, Justin Trefsger, arrived and condemned the building. Trefsger placed a placard on the front door of the building. The placard stated that the "structure known as 325 S. Centre Street" was "condemned as dangerous and unsafe" and notified all persons to "keep out." Ex. 2 (placard). The placard cited Section 108.1.2 of the Code, which addresses unsafe equipment "on the premises or within the structure." Code, § 108.1.2 (emphasis omitted). Trefsger testified he understood the distinction between "structure" and "premises" under the Code. Notes of Testimony (N.T.), 8/28/24, at 33 (agreeing that "premises" includes "structure"), 56 (same).

Trefsger mailed Appellant a violation notice that, like the placard, referenced the building. The notice explained that the fire occurred in the kitchen, which lacked a flattop grill with a grease trap and a fryer with a fire suppression system. The notice also scheduled an inspection for May 19, 2023, and stated that the "placard will remain on the building until all code violations are corrected and the building passes" inspection. Ex. 7 (May 17, 2023 letter). The notice also informed Appellant of his right to appeal the condemnation within 20 days.

Two days later, on May 19, 2023, Trefsger, James E. Misstishin (the fire chief), and a third-party building inspector conducted a full inspection of the building. Trefsger, via letter to Appellant, detailed numerous code violations, including the exterior of the building. For example, the letter identified propane tanks stored under a fire escape, an electrical wire running along the building's

southwest corner, an extension cord "leading from the ground into a second-floor window," and exterior lights with water inside. The letter also notified Appellant of his right to appeal. Ex. 6 (May 19, 2023 letter). Appellant did not appeal either notice.

*A. March 2024 Event*

On March 11, 2024, Chief Misstishin learned that Appellant planned to hold a public event at the property. Chief Misstishin volunteered to speak with Appellant "to see if we can fix this problem before it occurs." N.T., 8/28/24, at 63. The next day, March 12, Chief Misstishin met with Appellant and "talked about not doing the event because the property is posted, it's not just the building . . . ." *Id.* Chief Misstishin offered to conduct a health inspection and reinstate Appellant's original certificate of occupancy so that "his business could get back up and running." *Id.* That afternoon, Appellant called Chief Misstishin and stated that "his attorney advised him not to do that." *Id.* at 64 (reflecting Chief Misstishin's recollection of the call).

On March 16, 2024, Chief Misstishin, code official David Petravich, and Patrolman Fanelli[2] went to the property. *Id.* at 64-65. Chief Misstishin observed Appellant and "50 to 60" people "on the property." *Id.* at 65. Chief Misstishin spoke briefly to Appellant, warned him that he would be "cited with the violations," and left. *Id.* Chief Misstishin explained that he kept the encounter short because he "did not want to provoke the crowd." *Id.* He did not see anyone enter or anyone inside the building. *Id.* at 71-72. Chief Misstishin reported the event to Trefsger the following Monday. *Id.* at 68. Based on Chief Misstishin's information, Trefsger cited Appellant for violating Section 108.5. *Id.* at 21, 25. Trefsger had no knowledge that anyone entered the structure. *Id.* at 32. A magisterial district judge found

_____
[2] Patrolman Fanelli's first name is not in the record.

3

Appellant guilty of violating Section 108.5.

Appellant appealed to the trial court, which held a trial *de novo*, at which Chief Misstishin and Trefsger testified. The trial court aptly distilled Appellant's argument as "it was the structure that was condemned and that the people were on the premises not [in] the structure." *Id.* at 47. The court reasoned that the entire property at 325 South Centre Street was condemned as the courtyards do not have a separate address. *Id.* at 82 ("The property was condemned. And it's the same Tax ID, same property address."). The court found Appellant guilty of violating Section 108.5, reasoning that the "whole property was condemned" as it has "one address" and at least "five different violations that deal specifically with the outside of the property." *Id.* at 82-83; Order, 8/28/24. Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement raising 20 issues. The trial court filed a responsive Rule 1925(a) decision.

### B. July 2024 Event

We turn to the July 2024 event. At some point, Trefsger learned about a July 6, 2024 event involving an animal shelter and the service of alcohol and food. Trefsger photographed the event, which depicted Appellant and "numerous people inside of the premises. They were in the courtyard." N.T., 12/3/24, at 7. Trefsger clarified that he did not "witness anybody inside the building, just on the exterior." *Id.* at 8. In Trefsger's view, because "premises" includes both the building and the land, he cited Appellant for violating Section 108.5. *Id.* Trefsger agreed he saw no one occupying or using the building. *Id.* at 11.

A magisterial district judge found Appellant guilty, Appellant appealed, and after a trial *de novo* at which only Trefsger testified, the court found Appellant guilty of violating Section 108.5. Order, 12/4/24. Appellant timely appealed and

4

filed a court-ordered Pa.R.A.P. 1925(b) statement raising 19 issues. The trial court filed an opinion responsive to those issues, which relied in part on Chief Misstishin's testimony "that the condemnation included the entire premises." Trial Ct. Op., 2/5/25, at 13.

## II. ISSUES[3]

Appellant raises two issues. First, Appellant contends the Commonwealth failed to prove each element of Section 108.5 beyond a reasonable doubt. Second, Appellant maintains Section 108.5 is unconstitutionally vague and violates the rule of lenity. Appellant's Br. at 4.

## III. DISCUSSION[4]

### A. Arguments

Appellant argues that the Commonwealth failed to prove a violation of Section 108.5, specifically that he "occupied or permitted others to occupy" the structure on the property. *Id.* at 22. Appellant reasons that only the "structure" was

---

[3] Appellant raised identical issues and arguments for 66 C.D. 2025 and 70 C.D. 2025.

[4] "In conducting sufficiency review, we consider whether the evidence introduced at trial and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish the elements of the offense beyond a reasonable doubt. Our review does not involve reweighing the evidence and substituting our judgment for that of the fact-finder. In addition, the facts and circumstances need not be absolutely incompatible with the defendant's innocence; rather, the question of any doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances." *Chisebwe*, 310 A.3d at 268 (citation modified) (resolving sufficiency challenge for summary conviction).

We apply the rules of statutory construction when we interpret an ordinance. *S&H Transp., Inc. v. City of York*, 210 A.3d 1028, 1038 (Pa. 2019); *see also* Code, § 102.1 ("Where there is a conflict between a general requirement and a specific requirement, the specific requirement shall govern. Where differences occur between provisions of this code and the referenced standards, the provisions of this code shall apply. Where, in a specific case, different sections of this code specify different requirements, the most restrictive shall govern."). One such rule provides that every "statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). Courts do not defer to lay testimony construing an ordinance. *See S&H Transp.*, 210 A.3d at 1038.

5

condemned, noting that the placard did not state that the "premises" should be vacated. *Id.* at 22-23. He stresses that neither the placard nor the violation notice referenced the premises beyond the structure, let alone prohibited him from using the courtyard. *Id.* at 23-24.

The Commonwealth concisely counters that it proved a violation of Section 108.5. Commonwealth's Br. at 6. It reiterates that the fire chief observed around 50 people attending the March 2024 event on the property. *Id.* Similarly, Trefsger "observed numerous people on the premises" at the July 2024 event. *Id.*

### B. Legal Standards

We turn to the Code, which applies to all existing premises and structures and defines italicized terms. Code, § 101.2.[5] The Code "shall be construed to secure its expressed intent, which is to ensure public health, safety and welfare insofar as they are affected by the continued *occupancy* and maintenance of structures and *premises*." *Id.* § 101.3.

"Premises" is defined as a "lot, plot or parcel of land, *easement* or *public way*, including any structures thereon." *Id.* § 202. Whenever the word "premises" is used, the word "shall be construed as though [it was] followed by the words 'or any part thereof.'" *Id.* § 201.5. "Structure" (when italicized by the Code) is defined as "[t]hat which is built or constructed or a portion thereof." *Id.* § 202.[6]

---

[5] "The provisions of this code shall apply to all existing residential and nonresidential structures and all existing *premises* and constitute minimum requirements and standards for *premises*, structures . . . ." Code, § 101.2 (emphases in original). The Code italicizes defined terms, which are listed in Chapter 2 of the Code. *Id.* at vi. However, such "terms are not italicized where the definition set forth in Chapter 2 does not impart the intended meaning in the use of the term." *Id.*

[6] Section 201.5 provides in full: "Whenever the words '*dwelling unit*,' 'dwelling,' '*premises*,' 'building,' '*rooming house*,' '*rooming unit*,' '*housekeeping unit*' or 'story' are stated in this code, they shall be construed as though they were followed by the words 'or any part thereof.'" Code, § 201.5. The Code also defines "occupancy," "occupant," "condemn," and "exterior

The Code generally distinguishes between (1) structures and premises; (2) *unsafe* structures and unsafe equipment; and (3) *dangerous* structures or premises. *Id.* § 108.1.1 to .1.2, 108.1.5. For example, an "unsafe structure is one that is found to be dangerous to the life, health, property or safety of the public or the *occupants* of the structure . . . because such structure contains unsafe equipment or is so damaged, decayed, dilapidated, structurally unsafe or of such faulty construction or unstable foundation, that partial or complete collapse is possible." *Id.* § 108.1.1. In contrast, "unsafe equipment" includes "equipment on the *premises* or within the structure" that poses "a hazard to life, health, property or safety of the public or *occupants* of the *premises* or structure." *Id.* § 108.1.2. Relatedly, a "dangerous" (as opposed to "unsafe") structure or premises, includes a building or structure "likely to partially or completely collapse" or poses a "substantial risk of . . . building collapse or any other threat to life and safety." *Id.* § 108.1.5(5), (8).[7]

Upon discerning a code violation, the code official initially provides notice and posts the notice as provided by the Code. *Id.* § 108.3. For example, if "the notice pertains to equipment, it shall be placed on the condemned equipment." *Id.* If the owner, however, fails "to comply with the notice provisions within the time given, the *code official* shall post on the *premises* or on defective equipment a placard bearing the word 'Condemned' and a statement of the penalties provided for occupying the *premises*, operating the equipment or removing the placard." *Id.* §

property." Code, § 202. "Occupancy" is the "purpose for which a building or portion thereof is utilized or occupied." *Id.* "Occupant" is "[a]ny individual living or sleeping in a building, or having possession of a space within a building." *Id.* "Condemn" is "[t]o adjudge unfit for *occupancy*." *Id.* (emphasis in original). The Code defines "exterior property" as "the open space on the *premises* and on adjoining property under the control of *owners* of such *premises*." *Id.*

[7] If the building or structure is in "*imminent danger* of failure or collapse," then the code official may "require the *occupants* to vacate the *premises* forthwith" and post an appropriate notice at each entrance to the structure. Code, § 109.1.

7

108.4. Simply, the code official first provides notice and an opportunity to cure; second, a failure to cure may result in the code official posting a placard. *Id.* §§ 108.3 to .4.

We turn to the offense at issue: "Prohibited occupancy." *Id.* § 108.5. The first sentence of the offense provides: "Any occupied structure condemned and placarded by the *code official* shall be vacated as ordered by the *code official*." *Id.* The second sentence states, in relevant part: "any *owner* . . . responsible for the *premises* who shall let anyone occupy a placarded *premises* or operate placarded equipment shall be liable for the penalties provided by this code."[8] *Id.* Upon incorporating the definition of "premises" into the second sentence: any premises owner who lets anyone occupy a placarded premises or any part thereof is liable. *Id.* §§ 201.5, 202. More specifically, any owner who lets anyone occupy a placarded lot, plot, or parcel of land, or any part thereof, including any structures thereon, is liable. *Id.*

## C. Discussion

Instantly, the Commonwealth failed to prove that the premises was "condemned" and "placarded" within the meaning of Section 108.5. We begin with Section 108.5's first sentence, which addresses condemned structures that must be vacated. *See* Code, § 108.5. No one entered or occupied the condemned structure at either the March or July 2024 events. Chief Misstishin testified that he did not see anyone enter or anyone inside the building. N.T., 8/28/24, at 71-72. Trefsger had no knowledge that any person entered the structure. *Id.* at 32. The facts establish that

---

[8] The second sentence follows in full: "[(1)] Any person who shall occupy a placarded *premises* or shall operate placarded equipment, and [(2) (the owner-liability clause)] any *owner*, owner's authorized agent or person responsible for the *premises* who shall let anyone occupy a placarded *premises* or operate placarded equipment [(3)] shall be liable for the penalties provided by this code." Code, § 108.5. To be clear, predicate clause (3) applies to (1) and (2).

8

the structure was vacated. Section 108.5's first sentence, which requires that condemned structures be vacated, is not at issue.

Appellant's convictions therefore rest entirely on the second sentence: whether Appellant, as owner, let anyone occupy a placarded premises. Code § 108.5. The sole question is whether the premises was condemned and placarded, which we review *de novo* as a question of statutory construction. *See S&H Transp.*, 210 A.3d at 1038. Because the Code separately defines "premises" and "structure" and the former encompasses the latter, the precise question is whether condemning and placarding the structure constitutes placarding the premises itself. Code, § 202, 201.5.

It does not. Although the definition of "premises" is inclusive, the component parts of the premises do not subsume each other. In other words, when the premises is placarded, an owner is liable for allowing anyone to occupy any part of the premises or any part thereof. *Id.* §§ 108.5, 201.5. But condemning any part of the premises, *e.g.*, a structure, does not mean the entire premises is condemned. *Id.* § 201.5. It follows that placarding a condemned structure on the parcel does not mean the entire parcel has been condemned and placarded.

The reason is that the code official determines the scope of the condemnation. When the code official condemns only the structure for unsafe equipment under Section 108.1.2, then only the structure is condemned. If the code official condemns the entire premises, then the Code imposes liability for any person occupying the entirety of the premises, including the courtyard. Absent condemnation of the premises, the second sentence of Section 108.5 does not impose liability. *Id.*[9]

---

[9] If we were to find the Code ambiguous, the Commonwealth's reading would produce absurd results. Under the Commonwealth's reading, condemning any structure automatically

9

The location of the placard bearing the word "Condemned" does not alter this conclusion. Section 108.4 directs the code official to post the placard "on the premises." Code, § 108.4. Trefsger posted the placard on the building's front door, which is physically located on the premises. *See id.* The placard's physical location on the premises does not convert a condemnation of a structure into one of the entire premises, any more than mailing a notice to an address condemns everything at that address. Absent evidence that the entire premises has been condemned, a placarded and condemned structure on the premises does not mean the entire premises has been placarded and condemned. *See id.*

In sum, the Code distinguishes "structure" from "premises" and separately authorizes condemnation of the premises. Condemning a structure on the premises does not automatically condemn the entire premises.[10] Here, Trefsger condemned a structure for unsafe equipment and posted a placard on the structure's front door. The Commonwealth was required to prove that the premises itself was condemned and placarded.

To prove that the premises was condemned and placarded under the second sentence, the Commonwealth introduced evidence of the code official's enforcement action: the placard, the May 17, 2023 violation notice, and the May 19, 2023 inspection letter. Exs. 2, 6, 7. Each document identifies a structure or building;

_____

condemns the entire premises. A garage condemned for a code violation would prohibit the homeowner from occupying the house, the yard, or any part of the parcel. A barn condemned for structural defects would render an entire farm off-limits. The Code's drafters, who carefully distinguished between "structures" and "premises" throughout Section 108, could not have intended such a result. *See* 1 Pa.C.S. § 1922(1); *In re Thompson*, 896 A.2d 659, 669, 677 (Pa. Cmwlth. 2006) (applying rules of statutory construction to an ordinance and explaining that an interpretation producing an absurd result is contrary to those rules).

[10] *See also* Code, § 108.1.1 (describing "unsafe structures"); § 108.1.2 (addressing "unsafe equipment"); § 108.1.3 (discussing "structure unfit for human occupancy"); § 108.1.4 (describing "unlawful structure").

none identifies the premises. Trefsger understood the difference between "structure" and "premises" under the Code. N.T., 8/28/24, at 33, 55-57. In sum, the Commonwealth's evidence established that Trefsger condemned a structure. The evidence did not establish that the entire premises was condemned or placarded.

The trial court offered additional reasoning, which does not save the conviction. First, the trial court relied on Chief Misstishin's testimony interpreting the Code, but his lay interpretation on a question of law does not control. *See S&H Transp.*, 210 A.3d at 1038. Second, the trial court observed that the property has a single address and tax identification number. N.T., 8/28/24, at 82. The Code does not provide that a single parcel constitutes a single "indivisible unit," the entirety of which must be condemned. *See generally* Code. The Code distinguishes "structures" from "premises" because multiple structures, or a structure and open land, can exist on a single parcel. Condemnation of a structure at a single address does not mean condemnation of the entire premises.

Third, the trial court relied on exterior violations identified in the May 19, 2023 letter. However, the initial May 17, 2023 violation notice stated that the "placard will remain on the building" until Appellant corrected all code violations and the structure passed inspection. Ex. 7. The violation notice stated the conditions that govern removal of the placard. The notice did not expand the scope of the original condemnation of the structure to include the premises. The record reflects no amendment of the violation notice, placard, or other document separately condemning the premises because of the violations listed in the May 19, 2023 letter. In sum, conditions governing removal of the placard do not expand the scope of the initial condemnation from the structure to the entire premises.[11]

---

[11] We may not reverse on unpreserved arguments. *See Gibraltar Rock, Inc. v. Dep't of Env't Prot.*, 286 A.3d 713, 725 (Pa. 2022). We note, however, that the Code's other, broader definitions

11

We hold only that on these facts, when the code official condemned the structure for unsafe equipment, used the word "structure" throughout, and never referenced the "premises," the Commonwealth did not prove the premises was placarded. A different result might follow if the code official had expressly condemned the premises, if the placard or violation notice used the word "premises," or if the condemnation arose under a different provision.[12]

For all these reasons, the Commonwealth failed to prove that the *premises* was "condemned" and "placarded" within the meaning of Section 108.5. Because the Commonwealth failed to present sufficient evidence, we reverse the conviction. We need not address Appellant's remaining issue. *See generally Chester Residents Concerned for Quality Living v. Dep't of Env't Res.*, 668 A.2d 110, 113 (Pa. 1995) (explaining that because the court reversed on one issue, it need not address the remaining issues).

---

support this holding. *See* Code, § 202 (defining "condemn," "occupancy," and "occupant"). "Condemn" means to adjudge unfit for occupancy. *Id.* "Occupancy" and "occupant" are defined in building-centric terms: "the purpose for which a building is utilized," and "any individual living or sleeping in a building." *Id.* (citation modified). The building-centric definition "condemn" bolsters our reasoning that condemning a structure does not automatically condemn the surrounding land. Under the Code's definition of "exterior property," open space is not a building.

[12] Nothing in this opinion prevents a code official from condemning the *premises* when circumstances warrant. The Code provides the tools to do so. Section 108.1.5 addresses a dangerous "structure or *premises*" and includes conditions beyond the structure itself, such as a building "likely to partially or completely collapse." Code, § 108.1.5(5), (8). When a code official condemns the premises and uses that term in the placard, violation notice, and enforcement documents, Section 108.5's second sentence prohibits occupancy of the placarded premises or any part thereof. Again, our holding is limited to the facts herein: a condemnation of only a structure under Section 108.1.2 that did not reference the premises. The Code's purpose is to ensure "public health, safety and welfare" as affected by "the continued occupancy and maintenance of structures and premises." Code, § 101.3. That purpose requires an official to use the Code to match the scope of any condemnation to the scope of the hazard.

## IV. CONCLUSION

For these reasons, we reverse the conviction for the summary offense. A second appeal, docketed at 70 C.D. 2025, involves a similar summary offense, the same condemnation, and substantially identical facts. We reverse that conviction as well.

_____

**LORI A. DUMAS, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | No. 66 C.D. 2025 |
| v. | : | |
| | : | |
| Robert E. Weaver, Jr., | : | |
| Appellant | : | |

## **O R D E R**

AND NOW, this 6th day of May, 2026,  we REVERSE the order of the Court of Common Pleas of Schuylkill County, entered on August 28, 2024.

**LORI A. DUMAS, Judge**