IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Grossman Holdings LLC,  :
               Appellant  :
                 :
                 :   No. 959 C.D. 2022
         v.  :
                 :   Submitted: November 9, 2023
City of Philadelphia and City of  :
Philadelphia Zoning Board of  :
Adjustment

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE ELLEN CEISLER Judge
               HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                     FILED:  March 12, 2024

Grossman Holdings, LLC (Grossman) appeals from the order entered in the Court of Common Pleas of Philadelphia County (trial court), which affirmed the decision by the City of Philadelphia Zoning Board of Adjustment (Board). Grossman alleges that the Board improperly rescinded a prior decision and denied Grossman's variance request. We affirm.

## I. BACKGROUND[1]

Grossman owns a triangular-shaped property near a university. Currently on the property is a vacant, twin-family home that was previously granted

---

[1] We state the facts as presented by the Board, which we view in the light most favorable to the prevailing party. *See Cinram Mfg., Inc. v. Workers' Comp. Appeal Bd. (Hill)*, 975 A.2d 577, 583 (Pa. 2009) (*Cinram*); *accord Kneebone v. Zoning Hr'g Bd. of Twp. of Plainfield*, 276 A.3d 705, 710 (Pa. 2022) (*per curiam*) (affirming by an equally divided court in resolving a dimensional variance challenge). In *Kneebone*, five Justices of our Supreme Court agreed that this Court, in its appellate role, views the record in the light most favorable to the prevailing party. *Kneebone*, 276 A.3d at 715 (Mundy, J., opinion in support of affirmance); *id.* at 725 (Wecht, J., opinion in support of dismissal).

a variance for four dwelling units. *See, e.g.*, Bd.'s Findings of Fact & Conclusions of Law (Op.), 5/23/22, at 1. Grossman proposed to demolish the home and construct a condominium consisting of 22 dwelling units, 4 commercial units, 12 parking spaces, and 8 bicycle parking spaces. *See, e.g.*, *id.* To that end, Grossman applied for, and the City of Philadelphia Department of Licenses and Inspections denied, a use variance.[2]

Grossman appealed the agency decision to the Board, which held several hearings. Grossman acknowledged "overwhelming" community opposition to the original application and offered to revise the proposed project by, *inter alia*, reducing the density from 22 to 16 dwelling units. *Id.* at 3. Grossman suggested the revisions would not adversely affect the public health, safety, or welfare. *Id.* at 3-6. For example, Grossman opined that "transportation or public facilities" would not be adversely affected due to the 12 off-street parking spaces. *Id.* at 6.

Numerous community organizations opposed the project. For example, the Philadelphia Planning Commission reasoned, *inter alia*, that the property is located in a zoning district with a "relative lack of access to transit and shopping areas," and conflicts "with the long-term vision to place more students" on the university's campus. *Id.* at 7. The Councilwoman overseeing the district also opposed because the neighborhood "is already experiencing serious density issues" and "it doesn't appear . . . to be any real hardship" for Grossman. *Id.* at 6; Notes of Testimony (N.T.) Hr'g, 9/22/20, at 29. Numerous witnesses testified about perceived traffic issues, among other concerns. *See, e.g.*, Op. at 11-12.

---

[2] "A use variance is a request to use property in a manner that is wholly outside zoning regulations. This can be compared to a dimensional variance which involves a request for a reasonable adjustment of the zoning regulations to use the property in a manner consistent with the applicable regulations." *Metal Green Inc. v. City of Phila.*, 266 A.3d 495, 498 n.1 (Pa. 2021) (plurality) (cleaned up).

In relevant part, at the end of a June Board hearing, the Board chair asked the Board whether they had any objection "to voting this case today . . . ." N.T. Hr'g, 6/16/21, at 7. After a somewhat confusing exchange, the Board apparently had no objection and four members voted "yes" to granting the requested variance. *Id.* at 8; Op. at 10. The record does not reflect any "Record of Voting."

The Board resumed the hearing later that same day. N.T. Hr'g, 6/16/21, at 8. The Board chair apologized and asked whether Grossman's counsel was "still around." *Id.* One of the Board administrators indicated that Grossman's counsel was not present, and the Board chair stated, "I messed up. I called for a vote and it was a resumption hearing. . . ." *Id.* The Board chair reiterated his error, again apologized, and after consulting with a Board administrator, scheduled another hearing. *Id.* at 9.[3]

A few months later, the hearing resumed, at which time the Board chair

---

[3] We excerpt from the hearing transcript as follows:

(Hearing resumed later this same day.)
[Chair]: And I apologize. Earlier, on the [Grossman property], is [Grossman's counsel] still around?
[Administrator]: No, Chair, he's not. . . .
[Chair]: . . . I messed up. I called for a vote and it was a resumption hearing. We didn't have - -
[Administrator]: Unfortunately, we would have to resume again, because the attorney of record is not available.
[Chair]: My mistake. I sincerely apologize to anyone out there. I overlooked the comment about a resumption hearing. I apologize. And if we could . . . get a resumption as quickly as possible. Again, I take full responsibility for having looked over [sic] that notation. So [Grossman property], a hearing will be - -
[Administrator]: If I could state?
[Chair]: Yes.
[Administrator]: That you're going to rescind that decision, and all parties will be notified of the new resumption date after we speak to [Grossman's counsel].
[Chair]: So noted. Thank you very much, and again, my sincere apologies to anyone who's waiting to be heard.

N.T. Hr'g, 6/16/21, at 8-9.

stated that "[t]his is a resumption hearing." N.T. Hr'g, 9/21/21, at 2. Grossman's counsel acknowledged that "it was actually called and decided on June 16, and then that vote was rescinded to allow certain community members, who I believe are on the call today, to put their individual testimony on the record. *I'm happy to allow that to happen*, but would very much press for a decision – a re-decision today given that this, again, has been almost two years in the making, and this is the fourth hearing, you know . . . ." *Id.* at 3 (emphasis added). Following counsel's summary of Grossman's position, the Board heard from several additional witnesses. At the conclusion of the hearing, the Board voted to deny Grossman's variance request. *Id.* at 51-52. The record includes a "Record of Voting," memorializing the Board's official vote. R. of Voting, 9/21/21. Grossman did not request reconsideration from the Board. City of Phila. Zoning Bd. of Adjustment Rules & Reguls. § 6.3 (Sept. 28, 2015) (Zoning Rule).

The Board filed a decision explaining its denial. *See generally* Op. In relevant part, the Board found the testimony of Grossman's expert regarding traffic not credible. *Id.* at 18-19 (stating the "Board found [Grossman's counsel's] arguments and [Grossman's expert's] opinions related to traffic and parking impacts not to be credible or persuasive").

Grossman timely appealed to the trial court, which took no additional evidence. The trial court affirmed, and Grossman timely appealed to this Court. Grossman timely filed a court-ordered Pa.R.A.P. 1925(b) statement raising eight issues.

The trial court reasoned that the Board chair acted properly by unilaterally rescinding the Board's premature vote. Trial Ct. Op., 9/2/22, at 1. In any event, the court pointed out that all parties were present at the subsequent hearing

4

when they could object to the Board's rescission. *Id.* at 6. The court noted that Grossman's counsel "had agreed on the record" to proceed. *Id.* Relatedly, the court reasoned that Grossman waived the issue because it failed to establish any prejudice from the resumption hearing. *Id.* The court concluded that it was only after all interested parties "had their opportunity to present testimony and arguments" that the Board could hold a legitimate vote. *Id.*

As for the merits, the trial court held that Grossman failed to meet its burden. *Id.* at 7. Per the court, Grossman failed to justify a condominium with only 12 parking spaces. *Id.* The court reasoned that the Board could have "reasonably discerned" that Grossman's proposed condominium "would overload an already dense location . . . ." *Id.* The court noted that the Board "was duty bound to consider the significant opposition of neighbors" and other interested parties. *Id.* at 7-8. Per the court, opponents asserted that Grossman's condominium would negatively impact "parking, water and traffic flow, student congestion, trash collection and emergency responsive vehicles," among other concerns. *Id.* at 8. The trial court concluded that the Board properly denied Grossman's request for a use variance. *Id.*

## II. ISSUES[4]

Grossman essentially raises two issues. First, the trial court erred when it held that the Board properly rescinded its June decision in favor of Grossman. Grossman's Br. at 23. Second, because Grossman introduced sufficient, credible evidence in favor of the variances, the Board erred in denying the variances. *Id.* at 31. Relatedly, according to Grossman, the Board capriciously disregarded purported uncontradicted testimony and evidence. *Id.* at 46.

---

[4] Grossman's brief violates Pa.R.A.P. 2119 because the argument section was not "divided into as many parts as" the seven issues identified in the statement of questions involved. *See* Grossman's Br. at 3-4, 23-46.

## III. DISCUSSION[5]

### A. Rescission of the Board's June Vote

In support of its first issue, Grossman raises several technical challenges. Initially, Grossman contends that all Board actions require the votes of at least three Board members. *Id.* at 27 (citing City of Phila., Pa., Phila. Code (Zoning Code) § 14-303(14)(b)-(c)).[6] Building on its contention, Grossman reasons that in June 2021, when the Board chair resumed the hearing, there was no evidence that three Board members were present. *Id.* at 27-28. Per Grossman, the Board "cannot prove a quorum was present at the time of the [Board chair's] purported rescission" of the Board's vote favorable to Grossman. *Id.* at 28. In Grossman's view, the Board's "purported rescission is of no legal effect and this Court must

---

[5] "Where a court of common pleas takes no additional evidence in reviewing a land use appeal determination by a zoning hearing board, this Court's standard of review is limited to determining whether the local governing body that issued the challenged decision abused its discretion or committed an error of law." *In re City Turf Club Op Co.*, 308 A.3d 351, 357 (Pa. Cmwlth. 2024) (*Turf*) (citations omitted), *petition for allowance of appeal filed* (Pa., No. 41 EAL 2024, filed Feb. 7, 2024). "Local governing bodies abuse their discretion by making factual findings that are not supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (cleaned up); *see also* 2 Pa.C.S. § 754 (stating the reviewing court must affirm unless it finds "that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence"). We also defer to the agency's credibility determinations. *See Cinram*, 975 A.2d at 584-85; *accord 1825 Rt. 309 Allentown, LLC v. Zoning Hr'g Bd. of S. Whitehall Twp.*, ___ A.3d ___, ___ (Pa. Cmwlth., No. 487 C.D. 2022, filed Jan. 18, 2024) (*Whitehall*), slip op. at 7, 2024 WL 187923, *4. Finally, we may "affirm the decision of the trial court if the result is correct on any ground without regard to the grounds relied on by the trial court." *Mazer v. William Bros. Co.*, 337 A.2d 559, 562 n.6 (Pa. 1975).

[6] We state the cited Zoning Code section as follows:

All Zoning Board hearings are subject to the following provisions: . . .

> (b)   Three members of the Zoning Board shall constitute a quorum for any public hearing required under this Zoning Code.
> (c)   No action shall be taken by the Board unless at least three members of the Board, present at the time of the vote, concur.

Zoning Code § 14-303(14)(b)-(c).

reinstate the [Board's] earlier decision to grant [Grossman's] requested variance relief." *Id.*

Second, Grossman maintains that the Zoning Code and the Board's rules do not provide for rescission. *Id.* at 28-29. Third, the Zoning Code and the Board's rules do not provide for a "resumption" hearing. *Id.* at 29. Fourth, Grossman concludes that the Board's rescission occurred at a non-public hearing, when the Zoning Code requires a public hearing. *Id.* Accordingly, Grossman reasons the Board cannot rescind its earlier vote.[7] *Id.*

We apply the rules of statutory construction when we interpret local ordinances, regulations, and rules. *See S & H Transp., Inc. v. York*, 210 A.3d 1028, 1038 (Pa. 2019). In relevant part, the Zoning Code states that all "decisions of the Zoning Board shall state in writing the reason(s) for the decision . . . ." Zoning Code § 14-303(14)(m).[8] Similar to the Zoning Code, the Board's rules also address written decisions and votes. For example, the Board must file of record all votes and all Board decisions must be in writing. Zoning Rule §§ 5.3, 6.2.4.[9]

---

[7] The Board did not file a brief responding to Grossman's arguments.

[8] Section 14-303(14)(m) states in full:

(m)   All decisions of the Zoning Board shall state in writing the reason(s) for the decision, and notice of the decision shall be mailed to the applicant, the applicant's attorney of record, such other persons or attorneys who have properly entered an appearance in the case, and any Registered Community Organization or member of City Council (or their representative) who has submitted a letter concerning the matter. The decision shall be a public record. Formal findings of fact are not required.

Zoning Code § 14-303(14)(m).

[9] Zoning Rule Sections 5.3 and 6.2 follow:

**5.3. Record of Official Vote**

The Zoning Board shall keep records of its decisions showing the vote of each member upon each appeal, or each member's absence or failure to vote, indicating such fact, and shall keep records of its hearings and other official actions, all of

Relatedly, non-jurisdictional issues must be raised at the earliest opportunity on pain of waiver. *See Thompson v. Zoning Hr'g Bd. of Horsham Twp.*, 963 A.2d 622, 625 n.6 (Pa. Cmwlth. 2009) (holding that a standing claim was waived due to a failure to raise it before the zoning hearing board); *Cohen v. Zoning Bd. of Adjustment of City of Pittsburgh*, 417 A.2d 852, 853 (Pa. Cmwlth. 1980) (same).[10] Our Supreme Court explained that administrative agencies must have the "first opportunity to correct any such alleged error" "as early as possible," which ensures "an efficient use of judicial resources." *Station Square Gaming L.P. v. Pa. Gaming Control Bd.*, 927 A.2d 232, 240 (Pa. 2007) (*Station*). Parties must "advance all legal theories" before the administrative law tribunal resolves the parties' claims unless the reviewing court "is satisfied that the petitioner could not by the exercise of due diligence have raised [the alleged error] before the" agency. *Id.* (quoting Pa.R.A.P. 1551(a)(3)).

> which shall be immediately filed in the office of the Zoning Board and shall be a public record. . . .
>
> **6.2. Decisions**
>
> 6.2.1. A decision of the Zoning Board shall relate only to the zoning law and shall not be construed to apply to any other law, except insofar as authorized by statute or ordinance.
> 6.2.2. No action shall be taken by the Zoning Board unless at least three (3) members of the Board, present at the time of the vote, concur.
> 6.2.3 Any members not present during the hearing, or any session of a hearing where such hearing is conducted over multiple sessions, who participate in the decision shall certify in writing that they have read the full record before participating in the decision.
> 6.2.4. Decisions of the Zoning Board shall be in writing in a manner designated by the Zoning Board. The written decision shall document the reasons for the Zoning Board's determination in accordance with the relevant sections of the Zoning Code.

Zoning Rule §§ 5.3, 6.2. We add that Zoning Rule Section 6.3 permits reconsideration of a Board decision, which must be requested within ten days of the date that the Board mailed its decision. *Id.* § 6.3.1 to .2.

[10] *See also Riccio v. Newtown Twp. Zoning Hr'g Bd.* (Pa. Cmwlth., No. 636 C.D. 2021, filed Jan. 12, 2024), slip op. at 8 n.5 (holding issues not raised before the trial court are waived).

Instantly, we need not engage in any such inquiry, because Grossman affirmatively raised the rescinded vote but decided not to challenge it before the Board. *See id.* Grossman *agreed* "to allow" vote rescission and the resumption hearing. N.T. Hr'g, 9/21/21, at 3 ("I'm happy to allow that to happen . . . ."). At no point did Grossman alert the Board that its actions were improper under the Zoning Code or Rule. Grossman also did not request reconsideration. *See* Zoning Rule § 6.3. On this record, we cannot construe Grossman's statement as somehow alerting the Board to a potential reversible error. *See Station*, 927 A.2d at 240; *Thompson*, 963 A.2d at 625 n.6; *see also Dilliplaine v. Lehigh Valley Tr. Co.*, 322 A.2d 114, 116 (Pa. 1974) (plurality) (opining that the "ill-prepared advocate's hope is that an appellate court will come to his aid after the fact and afford him relief despite his failure at trial to object to an alleged error"). Grossman instead validated the Board's action.

But even if Grossman properly preserved its claim for appellate review, we would hold Grossman is due no relief. Every Board decision must be in writing, which must "document the reasons" for granting or denying the variance. *See* Zoning Rule § 6.2.4. Assuming the validity of the Board's June 16, 2021 vote[11] granting Grossman's variance, the Board did not mail a written decision documenting its reasons for granting the variance. *See id.* Without a written decision, Grossman or any other interested person could not request reconsideration. *See id.* § 6.3. Because the Board did not issue a record of voting or written decision following its June vote, there was nothing to rescind.[12] In contrast, the record reflects the Board's official vote and written decision denying Grossman's variance. *See,*

---

[11] Zoning Rule § 5.3 requires a written record of an official vote, and the record reflects no such record memorializing the June 16, 2021 vote.

[12] The Board may consider enacting appropriate rules governing rescission to the extent the Board wishes to rescind a particular Board action.

9

*e.g.*, R. of Voting, 9/21/21; Op. Accordingly, even if Grossman preserved his technical challenges to the Board's June vote and rescission, they lack merit because the Board did not issue a written decision. *See* Zoning Rule § 6.2.4.

### B. Grossman's Evidence

Before summarizing Grossman's argument, we briefly discuss some of the hearing testimony before the Board. Various interested parties testified about their concerns of increased traffic if the project moved forward. *See, e.g.*, Op. at 11-12. For example, a university representative expressed concerns about the traffic. *See id.* at 12. Other interested parties testified about current traffic congestion, whether the project would increase congestion such that it would interfere with emergency vehicles, and the need for a traffic study. *See, e.g.*, N.T. Hr'g, 9/21/21, at 23, 27-28, 32-33, 37, 50. In contrast, Grossman disagreed, reasoning that traffic is "not relevant" to the property and there is "extensive public transit in this area." *Id.* at 45. *But see* N.T. Hr'g, 4/28/21, at 9 (acknowledging "[t]here's a lot of commuter traffic"). We next summarize Grossman's argument.

Grossman essentially challenges the sufficiency and weight of the evidence regarding the Board's decision denying its use variance. Grossman begins by identifying three criteria for granting a use variance: (1) unique hardship; (2) no adverse impact on the public's health, safety, or welfare; and (3) the requested variance "represents the minimum relief and the least modification possible." Grossman's Br. at 31. For the second criteria, Grossman challenges layperson testimony about "traffic and density" as "general, speculative concerns" that did not contradict the "expert testimony" offered by Grossman. *Id.* at 50. Grossman, however, did not identify contrary evidence or testimony, including testimony from its own expert. *See id.* at 50-51. Grossman does not refer this Court to any expert

10

testimony addressing traffic, other than a general conclusion that the project would "not adversely affect transportation." *See* Grossman's Br. at 8-10, 15-17; Op. at 6.[13]

Presently, the Zoning Code lists eight general criteria, all of which must be satisfied in order for the Board to grant a variance. Zoning Code § 14-303(8)(e)(.1)(.a)-(.h); *see York*, 210 A.3d at 1038.[14] Additionally, the Board "must

---

[13] Grossman also asserts it "presented substantial evidence" that the "requested variances were the minimum relief necessary to avoid the hardship" to its property. Grossman's Br. at 44. In support, Grossman argues that the Board ignored the testimony of Grossman's witnesses and that no other interested party testified about the minimum relief. *Id.* at 45. Grossman concludes by asserting that the Board arbitrarily and capriciously "disregarded uncontroverted expert testimony and other evidence." *Id.* at 46.

[14] The Board must "grant a variance only if it finds *each* of the following criteria are satisfied":

> (.a) The denial of the variance would result in an unnecessary hardship. The applicant shall demonstrate that the unnecessary hardship was not created by the applicant and that the criteria set forth in § 14-303(8)(e)(.2) (Use Variances) below, in the case of use variances, or the criteria set forth in § 14-303(8)(e)(.3) (Dimensional Variances) below, in the case of dimensional variances, have been satisfied;
> (.b) The variance, whether use or dimensional, if authorized will represent the minimum variance that will afford relief and will represent the least modification possible of the use or dimensional regulation in issue;
> (.c) The grant of the variance will be in harmony with the purpose and spirit of this Zoning Code;
> (.d) The grant of the variance will not substantially increase congestion in the public streets, increase the danger of fire, or otherwise endanger the public health, safety, or general welfare;
> (.e) The variance will not substantially or permanently injure the appropriate use of adjacent conforming property or impair an adequate supply of light and air to adjacent conforming property;
> (.f) The grant of the variance will not adversely affect transportation or unduly burden water, sewer, school, park, or other public facilities;
> (.g) The grant of the variance will not adversely and substantially affect the implementation of any adopted plan for the area where the property is located; *and*
> (.h) The grant of the variance will not create any significant environmental damage, pollution, erosion, or siltation, and will not significantly increase the danger of flooding either during or after construction, and the applicant will take measures to minimize environmental damage during any construction.

make all of the following findings" to "find an unnecessary hardship in the case of a use variance." Zoning Code § 14-303(8)(e)(.2). First, the property has unique physical features such that it cannot be used for a permitted purpose and those features were not caused by the Zoning Code. *Id.* § 14-303(8)(e)(.2)(.a). Second, the property's unique physical features are such that it has no value under the Zoning Code and a use variance is necessary for "viable economic use." *Id.* § 14-303(8)(e)(.2)(.b). Third, the use variance would not (1) alter the essential character of the neighborhood and (2) negatively affect the public welfare. *Id.* § 14-303(8)(e)(.2)(.c). Fourth, a dimensional variance would not cure the hardship. *Id.* § 14-303(8)(e)(.2)(.d).[15]

In sum, as we read Section 14-303(8)(e)(.1) to (.2), the Board must grant a variance if eight criteria are satisfied, including the first criteria, which is that

---

Zoning Code § 14-303(8)(e)(.1)(.a-.h) (emphases added).

[15] Section 14-303(8)(e)(.2) follows:

To find an unnecessary hardship in the case of a use variance, the Zoning Board must make all of the following findings:

(.a) That there are unique physical circumstances or conditions (such as irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions) peculiar to the property, and that the unnecessary hardship is due to such conditions and not to circumstances or conditions generally created by the provisions of this Zoning Code in the area or zoning district where the property is located;

(.b) That because of those physical circumstances or conditions, there is no possibility that the property can be used in strict conformity with the provisions of this Zoning Code and that the authorization of a variance is therefore necessary to enable the viable economic use of the property;

(.c) That the use variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; *and*

(.d) That the hardship cannot be cured by the grant of a dimensional variance.

Zoning Code § 14-303(8)(e)(.2)(.a)-(.d) (emphasis added).

12

denying "the variance would result in an unnecessary hardship." *Id.* § 14-303(8)(e)(.1)(.a); *see York*, 210 A.3d at 1038. In turn, a finding of an unnecessary hardship for a use variance requires the Board to make findings that satisfy four criteria. Zoning Code § 14-303(8)(e)(.2); *see York*, 210 A.3d at 1038. Further, for either a dimensional or a use variance, an "applicant must still present evidence as to *each* of the conditions listed in the zoning ordinance, including unnecessary hardship." *Tri-County Landfill, Inc. v. Pine Twp. Zoning Hr'g Bd.*, 83 A.3d 488, 520 (Pa. Cmwlth. 2014) (*Tri-County*) (emphasis added and citation omitted). For example, even if the applicant establishes an unnecessary hardship for a use variance under Zoning Code Section 14-303(8)(e)(.2), the applicant must still prove the use variance would not "substantially increase congestion in the public streets" or "adversely affect transportation." Zoning Code § 14-303(8)(e)(.1)(.d), (.f). In other words, because *all* eight criteria must be met, an appellate court's resolution on one criteria may be dispositive. *See Tri-County*, 83 A.3d at 520; *see also York*, 210 A.3d at 1038.

Instantly, Grossman had the burden of establishing that the grant of the use variance would not adversely affect transportation. *See* Zoning Code § 14-303(8)(e)(.1)(.f) ("The grant of the variance will not adversely affect transportation or unduly burden water, sewer, school, park, or other public facilities[.]"). As the Board accurately noted, Grossman did not present any credible and persuasive evidence. *See* Op. at 18-19 (opining that Grossman "was required to offer more than conclusory assertions"). Grossman maintained that although "[t]here's a lot of commuter traffic," it was "not relevant" to the property given "extensive public transit." N.T. Hr'g, 4/28/21, at 9, 45. In contrast, numerous interested parties testified about traffic-related concerns and the potential impact on the neighborhood.

13

*See id.*; *accord, e.g.*, N.T. Hr'g, 9/21/21, at 23, 27-28, 32-33, 37, 50. To the extent that Grossman assails that testimony as speculative, that was for the Board to weigh. *See Cinram*, 975 A.2d at 584-85; *Whitehall*, ___ A.3d at ___, slip op. at 7, 2024 WL 187923, *4. Relatedly, we need not address Grossman's claims that the Board capriciously disregarded uncontroverted evidence, as Grossman failed *its* burden of proving that the use variance would "not adversely affect transportation." *See* Zoning Code § 14-303(8)(e)(.1)(.f). To be clear, upon deferring to the Board's credibility determinations, we hold that the Board's findings are supported by substantial evidence of record. *See* 2 Pa.C.S. § 754; *Whitehall*, ___ A.3d at ___, slip op. at 7, 2024 WL 187923, *4; *Turf*, 308 A.3d at 357. Accordingly, after viewing the record in the light most favorable to the prevailing party, we discern no abuse of discretion or error of law by the Board and trial court. *See Cinram*, 975 A.2d at 583.

## IV. CONCLUSION

For these reasons, we affirm the trial court's order sustaining the appeal adverse to Grossman, based on reasons that slightly differ from the trial court. *See Mazer*, 337 A.2d at 562 n.6.

_____
LORI A. DUMAS, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Grossman Holdings LLC,         :
           Appellant       :
                      :  No. 959 C.D. 2022
         v.           :
                      :
City of Philadelphia and City of   :
Philadelphia Zoning Board of     :
Adjustment

# **O R D E R**

AND NOW, this 12th day of March, 2024, we AFFIRM the order entered by the Court of Common Pleas of Philadelphia County adverse to Grossman Holdings LLC.

LORI A. DUMAS, Judge